(69 Hun, 519.)

DEAN et al. v. BENN et al.

(Supreme Court, General Term, Third Department. May 9, 1893.)

WATER COURSES—RAISING HEIGHT OF DAM—ACQUIESCENCE.
 Plaintiffs and defendants owned adjoining land, through which a stream ran, plaintiffs' land being above that of defendants. In 1881 a dam which had existed since 1860 on defendants' land was raised 12 inches, causing the water to flow back on plaintiffs' premises up to their mill. This was rebuilt in 1887 at the same height. Defendants' grantor purchased the premises in 1886, by deed granting the right to retain the water of the stream, as then used. Plaintiffs knew of the building of the dams in 1881 and 1887, and of their height, but made no objection. Defendants' grantor, before knowing that plaintiffs made objections to the height of the dam, made extensive permanent improvements on the premises in connection with the dam. In 1888 plaintiffs and defendants' grantor settled a dispute as to the boundary between their premises, and exchanged deeds, plaintiffs at the time making no claim that the dam set back water on their premises. *Held,* that plaintiffs' acquiescence prevented recovery of damages for the flooding of their premises.

Appeal from special term, Montgomery county.

Action by Luther L. Dean and others against William J. Benn and another for damages for maintaining a dam at a certain height, and also asking that the dam be lowered. From a judgment for defendants, plaintiffs appeal. Affirmed.

The cause was tried in the court below before Mr. Justice Tappan, whose findings of fact and conclusions of law are as follows:

### Findings of Fact.

The plaintiffs are the owners and in possession of certain real property and water rights described in the complaint herein, situate on the Chuctanunda creek, in the town of Amsterdam, upon which are situate divers mills, propelled by water, known as the "Park Knitting Mills;" and also of a tail-race, through which the water is conveyed after use at said mills, until the same is discharged in said creek on plaintiffs' said premises. That said plaintiffs and their grantors have for more than 20 years next before the commencement of this action owned, occupied, and possessed said property, and have been possessed of the same, using and claiming the same in fee. That the plaintiffs and their grantors have for more than 20 years next before the commencement of this action rightfully used the waters overflowing said premises, in the usual and customary manner, for propelling machinery. That the defendants are in possession of, using, and occupying the premises on said Chuctanunda creek next below and adjoining the said premises of plaintiffs, and are the owners thereof, and using the same for the purposes of their business of manufacturing by the use of the water flowing in said creek. That about the year 1860 an old dam was standing and used on said stream at the site of the present dam of the defendants, and on the lands of defendants' grantor; but said dam did not check or impede the flow of water, and thereby cause the same to flow or set back on the lands of plaintiffs, nor upon the machinery of plaintiffs, nor impair the full use of the same by plaintiffs. That since the year 1860, and about the year 1871, said dam of 1860 was removed, and a dam was built in its place, at said site on the premises now occupied by defendants, by defendants' grantor or predecessor in possession, which said dam of 1871 was built higher than the dam of 1860, and raised the water about two feet higher above said dam than did said dam of 1860; but said dam so built in 1871 did not raise the water, and flow the same back upon the said lands and premises now occupied by plaintiffs. Said dam, so built in 1871, was carried away in 1881, and in said last-named year a new dam was built in its place by Maxwell Bros., (who were in possession of the said premises so occupied by defendants as aforesaid, claiming to be the owners or lessees thereof,) higher than the said next preceding dam, whereby the water in said stream was raised above said dam, and caused to flow back on the said lands and premises of the plaintiffs at the boundary line of the said last-named premises and the premises of the defendants, and upon the tailrace leading from the wheelpit of the plaintiffs' mill to said creek; and at the said wheelpit to the depth of 12 inches, and at some portions of the time, by temporary increase of height of said dam, to a greater depth. That during the year 1887 said last-named dam was largely carried away by a freshet in said stream, and Charles D. Austin, defendants' grantor, with his partner in business, McGregor, during the same year, built a dam on substantially the same site, and which is the dam now owned by defendants. That the said dam of 1887 was intended to be built and was at the same height of permanent structure of the dam of 1881, and raised the water of said creek upon the said premises of plaintiffs to the same height. That said defendants continued to maintain and use the said dam as erected in 1887 by said Austin and McGregor. That said stream on plaintiffs' land was first utilized as a power in 1867 or 1868, when the first wheelpit was dug and tail-race built to said creek. That from the division line between the premises of the plaintiffs and the premises of the defendants, up to the bed of said stream, said bed was, in 1868, and before, a nearly regular and unbroken inclined stratum of stone, and still so remains. That the tailrace of plaintiffs is, and has been since the year 1868, higher than the westerly margin of said stream. That the crest or pour of defendants' dam, as now used and maintained by defendants, is at least 12 inches higher than the level of the surface of the water at the division line between the lands of plaintiffs and the lands of defendants, during its natural, ordinary flow. That, although plaintiffs have suffered continuous damage by such flowage, caused

by defendants' dam, yet it is impracticable to fix or compute an accurate measurement of such damages, because of numerous contingencies, such as the varying time and extent of such flowage and obstructions, and the uses to which said water power may be applied. That defendants now overflow the lands, premises, and machinery of plaintiffs, and propose to continue and maintain the present dam at its present height, and thereby overflow the lands, premises, and machinery of plaintiffs in the future. That plaintiffs have been damaged much by such acts on the part of the defendants, and that the damages which are liable to and may accrue to plaintiffs by such cause in the future cannot be correctly ascertained. No sufficient evidence was given upon the trial to authorize any legal estimate of the damages sustained by plaintiffs by reason of the flowage before mentioned. That plaintiff Dean was informed by the Hewitt Bros., who were engaged in building said dam of 1881, that it was being built higher than the old dam, and so as to flow back on the plaintiffs' premises. That said dam was completed and remained until carried away in 1887, without any objection on the part of the plaintiffs. In March, 1886, Charles D. Austin purchased the premises on which said mill dam and mill pond stood for $20,000, and took possession under a deed granting the right to retain the water of the creek as then used or then enjoyed; and said Austin enjoyed this right undisturbed and undisputed for a year or more before the dam of 1881 was carried away. Plaintiffs apparently acquiesced in such use and enjoyment. While the dam of 1887 was being built, the plaintiffs frequently saw the work in progress. The plaintiff Dean talked about its height with the men at work upon the dam, when they had reached the top of one side, and was informed that it was being built to the same height as the dam of 1881. He stated that he was glad Austin was building so good a dam. He acquiesced in the building of said dam. Said dam was completed without any objection on the part of the plaintiffs. Said Austin gave personal attention to the work, and was about the premises a good deal of the time. He directed the new dam to be built to the height of the old one, believing that he had a right so to maintain it. The plaintiff Dean had sufficient opportunity to communicate with said Austin, but kept silent. Said Austin completed the dam, believing that the plaintiffs had no adverse interest in the matter, and relying upon their silence and acquiescence. Said Austin thereafter, and before he knew that the plaintiffs claimed that the dam was too high, made extensive permanent improvements on said premises, to be used in connection with said dam. In 1888 said Austin and the plaintiffs settled a long-standing dispute about the boundary line between the said premises of the plaintiffs and the said premises of the defendants. They divided the disputed territory, Austin conveying to plaintiffs the upper portion, and they conveying to him the lower portion, and paid him $500. The plaintiffs at that time made no claim to Austin that his dam set back water on their premises. Austin conveyed the lands in question believing that plaintiffs had no such claim. Such claim was then, in no manner, referred to. The land conveyed to Austin by plaintiffs was bounded southerly by Austin's said mill pond or dam and the Chuctanunda creek, and westerly by the highway leading across the stone bridge and past the knitting mill of said Charles D. Austin. Said dam and pond were in the same condition at the time of said conveyance as when this action was begun. Said Austin, in February, 1889, conveyed said premises mentioned in the third finding therein to the defendants, and the lands on which were situated said dam and mill pond and knitting mill, with the appurtenances. The said findings of the said jury are affirmed to the extent that they conform to the findings herein, and to no greater extent, or otherwise, and, except as aforesaid, are disapproved.

### Conclusions of Law.

Plaintiffs are not entitled to maintain this action against the defendants. By reason of the silence and apparent acquiescence of the plaintiffs while the dam of 1887 was being built, with full knowledge of the fact of such building, and the extent to which it would flow back when built; and also by reason of their silence and apparent acquiescence since then, and by reason of their dealing with the said Austin in reference to the said premises,

dam, and pond of the defendants, as stated in the findings of fact herein,—plaintiffs are estopped from asserting that said dam is higher than it could have been lawfully built, or that it flows the water back onto the lands of said plaintiffs to a greater extent than might be lawfully done, to the prejudice of the defendants who succeed to the rights of said Austin. Plaintiffs are not entitled to recover any damages for the flooding of their said premises or mills or machinery in the manner stated in the findings of fact herein. Plaintiffs' complaint should be dismissed upon the merits, and costs should be awarded against them in favor of the said defendants. Judgment is ordered accordingly.

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

W. L. Van Denbergh, (Matthew Hale, of counsel,) for appellants. Edward P. White, for respondents.

HERRICK, J. It seems to me that plaintiffs acquiesced in the erection of the dam to such a height as to cause the damage, and that such acquiescence, together with their silence at the time of the exchange of the deeds mentioned in the eighteenth finding of fact, should prevent a recovery by them. I see no occasion for another opinion. It was sufficiently discussed by Judge Tappan. See, also, Pom. Eq. Jur. §§ 816-818. All concur.