(22 Misc. Rep. 397.)

### HAZARD v. WILSON et al.

(Supreme Court, Special Term, Niagara County.    January, 1898.)

1. MORTGAGE—PARTIAL RELEASE.

A mortgagee agreed in writing to release one acre of land to the mortgagor upon payment of $500 and a promise that there should be erected thereon a valuable building.    Unknown to the mortgagee, the mortgagor represented the equitable owner of the mortgaged premises.    The amount agreed upon was paid, and in reliance on the mortgagee's promise, although no formal release was made, valuable buildings were erected by the equitable owner on an acre of the land.    No selection of any particular acre was made or agreed upon, but no advantage was taken by the equitable owner in selecting the acre upon which the building was erected.    *Held*, in an action to foreclose the mortgage, that the acre upon which the buildings were erected was exempt from sale.

2. SAME—SELECTION OF PORTION RELEASED.

Where a mortgagee agrees in writing to release an acre of land to the agent of the equitable owner, who promises to erect valuable buildings thereon, in the absence of any designation of a particular acre by the mortgagee the acre selected by the owner upon which the buildings are erected will be binding, in the absence of fraud in such selection.

Action by Carrie L. Hazard against Edward F. Wilson and others to foreclose a mortgage.    Judgment of foreclosure for plaintiff except as to one acre of the premises.

Norris Morey, for plaintiff.

Warner & Lindsay, for defendants Grant, Wilson, and Julius A. and Arthur G. Kuck.

SPRING, J.    On March 22, 1894, the defendant Wilson was the owner of the lands and premises described in the complaint, and on that day executed the bond and mortgage in suit.    On June 1, 1895, Wilson, by written agreement, sold to the defendant Grant these lands for $15,665, $750 whereof were to be paid September 1, 1895, a like sum December 1st of that year, and the residue in payments of $1,500 each every six months thereafter, and he was to receive a warranty deed when $5,000 were paid on the purchase price, and give back a mortgage to Wilson to secure the amount then unpaid, and he was

to assume as part of the purchase price whatever there was unpaid on this mortgage in suit, and by the terms of the mortgage the mortgagee was to release any portion of the land upon being paid $500 for each acre so released. July 19, 1895, Grant, also by written contract, sold to the defendants Jamison and four others one-half of the lands in controversy, excepting 3.95 acres situate west of the Buffalo & Lockport Railroad track, for the sum of $9,583. Fifteen hundred dollars of this purchase price were paid in cash, and Grant agreed to pay out of the cash payment $500 on plaintiff's mortgage. Grant was to give a deed upon receiving $5,876, and the grantees were to assume the payment, among other burdens undertaken by them, of one-half the balance remaining unpaid on plaintiff's mortgage after the payment of $500 had been applied thereon. This agreement, though bearing date July 19th, was not, in fact, executed until the 27th of that month. Contemporaneously with this agreement, Wilson and Grant entered into a contract in writing, whereby Wilson undertook to assume Grant's part of the same, and Grant assigned the agreement to Wilson. In September Wilson conveyed to Grant the 3.95 acres, and an undivided one-half of the other lands described in the mortgage, and took back a mortgage to secure the payment of $6,449.67. While the terms of this mortgage do not coincide with those embodied in the agreement of June 1st, yet that agreement is the only basis for the conveyance, and the only evidence of any interest in the land held by Grant. By the deed Grant assumed the payment of one-half of the incumbrances on the lands, including that of plaintiff. This modification of the agreement of June 1st was rendered necessary by the contract Grant had made in selling a portion of the lands to Jamison and others, and which had been ratified by Wilson. In compliance with the agreement executed July 27th, Wilson subsequently conveyed the lands described therein to Jamison and his co-vendees. So, in the summer of 1895, Grant became the equitable owner of all the lands covered by the mortgage in suit, and later of the 3.95 acres west of the railroad lands, and an undivided one-half of the remaining premises, and was liable to pay one-half of plaintiff's mortgage, and also, by his agreement with Jamison and the other vendees, was to pay $500 thereon. These agreements were all completed before August 1, 1895, so the liability to pay the $500 attached before that day. Plaintiff's mortgage was then due, and any payment made upon it could not, of itself, be made the basis of any legal consideration. Arend v. Smith, 151 N. Y. 502, 45 N. E. 872. And, beyond that, the payment of $500 had explicitly been provided for. So far as the evidence shows, plaintiff had no actual knowledge of any of these transactions. Grant designed to erect a factory upon an acre of this land west of the railroad. He or Wilson procured a release from a mortgage lien prior to that of plaintiff's, and sought to obtain a release of plaintiff's mortgage to an acre of the land. Mr. Mason was then acting as attorney for the plaintiff to make collections on this mortgage, and had it, with the bond, in his custody. Wilson interviewed Mason, explaining to him the project of the factory site, and the enhancement of values that would follow to lands in that vicinity, and asked for a release of an acre of the

land for the purpose of putting up the manufactory thereon. Mason advised plaintiff of the desire of Wilson, and she requested him to see Mr. Arend, whom she at times consulted. Mason then explained the situation to Arend, who believed the erection of the factory advisable, and recommended giving the release. Mason thereupon wrote the following letter to Wilson:

"July 25, 1895.

"Mr. E. F. Wilson, Tonawanda—Dear Sir: Miss Hazard will extend your mortgage for two years, to be paid in two equal annual payments, and also release one acre, on the payment of $500, provided the payment is made before August first, 1895. Edward C. Mason, Atty. for Miss Hazard."

This letter was shown to Grant, and the $500 were paid July 31st, and Grant immediately proceeded to erect his factory, and expended over $8,000 on that venture, and seeks to have the acre covered by these buildings relieved from the lien of the mortgage which plaintiff is now foreclosing.

While the payment of the $500 cannot be urged as a consideration for the release of the land, it is forceful as a circumstance showing compliance with the conditions contained in Mason's letter. Mason had authority sufficient to bind the plaintiff. She was apprised of the request of Wilson, and, in effect, turned the consideration of the matter over to Arend; and, when the latter advised extending the time for the payment of the mortgage, and to give the release, that was substantially her direction. She did not tell Mason to get Arend's advice, and report to her, but her inability to meet the exigency of the situation was manifest, and so she committed it to her friend and adviser. That Mason so construed her commission and the authority of Arend is obvious from the letter he wrote. Mason must have realized that on the strength of this letter money would be expended in the erection of the factory, and he did not suggest calling to get the release, but imposed one condition,—the payment of the $500. This money was paid to him within a week after his letter, and he evidently expected that was in compliance with the requirement he had exacted. Mason is too reputable a lawyer to write this letter without any suggestion from plaintiff, as she would have us believe. She was, therefore, responsible for what Mason did. The letter was submitted to Grant. He relied upon it, and expended the large sums of money required in the erection of this plant, and equitably should be protected. The inducement for the release of the acre and extension of the mortgage was not the payment of the $500. But the plaintiff owned a large tract of vacant property. The erection of the factory was expected to increase its value. That was the inspiring purpose for the release. Owners of property who pay a bonus to factory men for establishing a plant in which workmen are to be employed are not making a donation, but it is quid pro quo. They make it as an investment, and anticipate returns in the enhanced value of their property. It was expected the erection of the plant would follow the release, and that expectation was realized; and, now that Grant, for whom Wilson acted, has performed, the plaintiff should not be heard in a court of equity to resist performance on her part.

It is not of the utmost importance whether or not the letter, in

terms, is a release of the land from the operation of the mortgage. The design was to have it operative for that purpose. Grant so construed it, and erected his buildings in the faith that it was tantamount to a release, and the plaintiff is estopped to assert that it is not so in effect. The doctrine of estoppel in pais is simply the declaration of an equitable principle to prevent injustice, and to protect those who have relied upon the acts or admissions of others, made with the expectation that such reliance would be placed upon them. The authorities are a unit that where a person has induced another to act in a particular manner he will not be permitted to evade the effect of his admission where injury would result to one who has parted with value on the strength of such admission. Trustees v. Smith, 118 N. Y. 634, 23 N. E. 1002; Crawford v. Ormsbee, 6 App. Div. 50, 39 N. Y. Supp. 740; Brown v. Bowen, 30 N. Y. 519–540, et seq.; Dezell v. Odell, 3 Hill, 215; Pom. Eq. Jur. § 802 et seq. Intentional fraud is not the essence of the doctrine of equitable estoppel. Continental Nat. Bank v. National Bank of the Commonwealth, 50 N. Y. 575; Dean v. Benn, 69 Hun, 519–529, 23 N. Y. Supp. 708; Rice, Ev. 714; Pom. Eq. Jur. § 803. The letter of Mason granted two favors, which had been sought by Wilson,—the extension of the mortgage for two years and the release of an acre. They are inseparably connected in the letter. There is no pretense of any definite promise of an extension except that contained in the letter of Mason. The plaintiff denies any knowledge of the conversation with Mason authorizing the release, or referring the matter to Arend, or of the letter of Mason, and yet her complaint, verified by her, avers an extension was granted, which tallies precisely with that allowed by Mason. If she knew of the extension, the conclusion seems irresistible she must have possessed information of the other coincident fact.

It is urged that the release fails to designate any particular acre, and is, therefore, void for indefiniteness, and authorities are cited to support that contention. There is no suggestion that any fraud was perpetrated or advantage taken in the selection of the acre chosen. The $500 per acre made the highest price of the land sold, as appears from the agreements, and it was stipulated releases would be executed upon the basis of that sum per acre. It does not appear the acre in question exceeded in value any of the rest of the land. Therefore the position of plaintiff is not based upon any sinister motive in Grant locating his factory on the precise spot he erected it. The letter of Mason designated no particular acre. He or the plaintiff had a right to make the selection. That privilege seems to have been waived by the plaintiff or his alter ego. The defendant then had a right to make the designation, and, when once fixed fairly and honestly, the selection was irrevocable. Onthank v. Railroad Co., 71 N. Y. 196. There was no uncertainty as to the quantity. The release was of one acre, and that is all Grant assumed to take under the release. The uncertainty as to designation was cured by a fair selection made by Grant, resting upon the implied consent in the letter for him to do so. Grant was not a stranger to the transaction. He was the equitable owner of the land. He had agreed to pay one-half the plaintiff's mortgage, and she could enforce that undertaking, though not a party

to the agreement. Bowen v. Beck, 94 N. Y. 86; Post v. Railroad Co., 123 N. Y. 580, 26 N. E. 7; Association v. Kellogg, 141 N. Y. 348–356, 36 N. E. 326; Thomas, Mortg. § 567 et seq. It was not expected Wilson would erect the factory. He did not so represent to Mason, but stated it was to be done by others. Wilson was interested because he was the plaintiff's mortgagor and obligor, and also had large claims upon the land. The augmentation in value would inure to his benefit. The indebtedness represented by the bond and mortgage in suit was primarily Wilson's, and he was, therefore, the one who would be likely to procure the release. But no deception was practiced upon Miss Hazard or Mason. The man who was after the release was Grant, for he was to put money into the plant; and while all lienors and parties legally interested in the land were to reap indirect benefits accruing from the erection of the factory, yet he above all others needed and solicited the release. It was not incumbent upon Wilson to disclose the name of his principal, and, even if it had been supposed he was the real party to erect the buildings, still the principal in fact would have been liable to plaintiff, and could, therefore, have insisted upon the release. Ludwig v. Gillespie, 105 N. Y. 653, 11 N. E. 835. Nothing could be charged against Grant because he did not obtain the release in form at the time. Plaintiff might well refuse to execute that instrument until the factory was erected. If a formal release had been delivered by Miss Hazard July 25th, when the letter was written, she would be at the mercy of Wilson or his undisclosed principal, Grant. Their refusal to comply might involve her in litigation, but her agreement to release is as enforceable against her upon performance by Grant as an agreement to convey. The plaintiff is entitled to the usual judgment of foreclosure, but exempting from the sale the acre described in the answer of defendant Grant.

Ordered accordingly.