FISCHER v. TRUSTEES OF VILLAGE OF CLIFTON SPRINGS.

(Supreme Court, Trial Term, Ontario County.   December 23, 1909.)

1. WATERS AND WATER COURSES (§ 85*)—DIVERSION—INJUNCTIVE RELIEF.
   The court, in a suit to restrain the diversion of water and for damages, may grant injunction, though only nominal damages are established.
   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 85 ; Dec. Dig. § 85.*]

2. WATERS AND WATER COURSES (§ 78*)—RIPARIAN RIGHTS.
   A riparian proprietor has, as a general rule, the right to demand that the stream shall flow through his land in its usual quantity.
   [Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 67–69 ; Dec. Dig. § 78.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MUNICIPAL CORPORATIONS (§ 834*) — DIVERSION OF WATER IN NATURAL STREAM—LIABILITY.

A municipal corporation, which diverts and diminishes the flow of water in a natural stream from the lands of another by the operation of a waterworks system, is liable in damages.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1784; Dec. Dig. § 834.*]

4. MUNICIPAL CORPORATIONS (§ 841*) — DIVERSION OF WATER IN NATURAL STREAM—LIABILITY—PERSONS ENTITLED TO RELIEF.

One who actively engaged as water commissioner in the construction by a city of a waterworks system, which diverted water from the land of another, could not, on subsequently purchasing the land with knowledge of the diversion, sue the city to enjoin the diversion and for damages.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1790; Dec. Dig. § 841.*]

Action by Leonard D. Fischer against the Trustees of the Village of Clifton Springs for an injunction restraining defendants from diverting waters and for damages. Complaint dismissed.

Thad Collins, Jr., for plaintiff.
Willis C. Ellis (Frank Rice, of counsel), for defendants.

CLARK, J. This case was moved for trial at the Ontario Trial Term in October, 1908, and a jury was waived, and by stipulation of the parties the case was tried before the court without a jury. During the trial plaintiff offered in evidence an award, and all proceedings in the so-called Sheldon Case. Decision was reserved with reference thereto until the final disposition of the case. That proceeding was between other parties, and did not involve the precise questions litigated here, and in view of the facts developed in this case the proceedings in the Sheldon Case are not binding upon the defendant here, and the objection is sustained, with an exception to the plaintiff.

The defendant is a municipal corporation, and for the purpose of supplying its inhabitants with water it purchased certain lands in the town of Hopewell, Ontario county, upon which were located certain springs. In the year 1896, and some time after the purchase of these springs, the defendant constructed a system of waterworks, by means of which it conducted part of the waters flowing from these springs to a reservoir, from that receptacle the water was distributed by gravity to the inhabitants of the village of Clifton Springs. When the village decided to install this system of waterworks, and during all the time of its construction, plaintiff was a member of its board of water commissioners, and in that capacity actively participated in installing the system; he being a water commissioner from 1895 for four years, and after that the superintendent of defendant's water system up to the year 1907. He knew all about the construction of this water system, was actively engaged in the work, and, as he testified, "I bossed the whole of it principally."

Long after the installation of defendant's water system, and in 1901, plaintiff purchased the lands described in the complaint, consisting of two parcels, one of 9 acres and one of 14 acres, being disconnected and considerable distance from any highway. The only means plaintiff

has of reaching said lands is by license to go over lands of adjoining owners, which privilege can be revoked at any time. For many years a small brook has passed through these lands; it being a well-defined water course, which had its origin in the springs in question. It is claimed by the plaintiff that the flow of water down through this brook has been diminished by reason of the fact that defendant had diverted some of the water from the springs to its reservoir. The evidence on that point was very conflicting; many witnesses called by defendant, who had known the brook for years, testifying that there was no substantial difference in the quantity of water flowing through the brook before and after the construction of defendant's waterworks.

It was clearly established by the evidence that since the waterworks were constructed, in the spring of the year and during wet seasons, plenty of water flows down the stream as it passes through plaintiff's two parcels of land; whereas in dry seasons the stream will have little water in it, and occasionally is entirely dry. The evidence is also very clear that practically the same condition existed before the construction of defendant's waterworks; for witnesses who had known the stream for many years testified that, even before the waterworks were constructed, at times during dry weather the stream would be dry.

There is no pretense here that all the water from the Buchan springs is diverted by defendant. The overflow always runs from the catch-basin into the brook, and so on down past plaintiff's lands; but defendant uses considerable water, and it all comes from these springs, and it must be held that there is some diminution in the quantity of water flowing down the brook, caused by defendant's diverting it from the springs to its reservoir, where it is distributed to the inhabitants of Clifton Springs, and consequently not returned to the water course. The plaintiff in this action seeks to recover damages for the diversion of these waters, and to restrain defendant from their further use.

The evidence of plaintiff's damages is exceedingly unsatisfactory, having been given largely by parties who have themselves actions pending against the village for diverting the waters of this brook, and at best plaintiff would be entitled to but nominal damages, although the court would have the power, even though but nominal damages had been established, to grant the relief by injunction sought by plaintiff.

It is claimed that plaintiff is estopped from seeking any such relief by reason of the fact that he himself, acting as an officer of the village, diverted the waters before he ever purchased the premises in question. As a general proposition a riparian proprietor has a right to demand that the stream shall flow through his land in its usual quantity. Gould on Waters, § 20. And a municipal corporation which diverts and diminishes the flow of water in a natural stream from the lands of another by the operation of a system of waterworks is answerable in damages. Smith v. Brooklyn, 160 N. Y. 357, 54 N. E. 787, 45 L. R. A. 664.

But even though the use of waters from the springs in question is an unlawful diversion, to the injury of plaintiff's lands, he is personally responsible for it, because he actively engaged in the work of diversion. When defendant originally diverted the waters without the con-

sent of lower riparian owners, it constituted a trespass; and the plaintiff, having actively engaged in that work, was himself a trespasser, and he cannot be assisted by a court of equity in recovering damages which resulted from his own wrongdoing.

It will be remembered that, when the waterworks system was inaugurated, plaintiff actively engaged in the construction of the plant, being a water commissioner, and that after his term of office expired he was superintendent of the waterworks. He did not own the lands in question when he was thus engaged, but purchased them long afterwards, well knowing the fact that the waters had been diverted previously, and because of that fact less water was flowing down through these lands than formerly. He took that into consideration when he purchased the lands, and so testified on the trial of this action, and bought the property with that in view, to wit, that there was less water flowing down through the stream than there had been before the waterworks had been constructed. He did not, therefore, purchase as one of the appurtenances of the lands in question the right to have the water from these springs continue to flow as it had before defendant's water system was installed, for he purchased the lands as they were then, with such rights and privileges as then existed, well knowing that the diverting of part of the waters from these springs diminished to some degree the quantity of water flowing down through the brook.

His act in assisting the defendant to divert the waters when the system was first installed gave him full knowledge of the situation, and he must be deemed to have consented to such diversion. For example, if the plaintiff had owned the premises in question at the time the waterworks were installed, and had gone on and actively participated in diverting the water when the system was constructed, as plaintiff concededly did in this case, he would have been deemed to have consented to such diversion; for he could not have quietly stood by and said nothing, and actually assisted in diverting the water, and then ask the village to pay him for his wrongful act. Neither can he purchase a cause of action that he could not have maintained if he had been in place of the person from whom he purchased the lands. His act in engaging in the diversion of these waters would have amounted to a consent, which would have precluded a recovery on his part if he had then been the owner of the property, and that consent extends and applies to the cause of action which he claims was transferred to him when he purchased the property in question. Dean v. Benn, 69 Hun, 519, 23 N. Y. Supp. 708; Churchill v. Baumann, 95 Cal. 541, 30 Pac. 770; Churchill v. Baumann, 104 Cal. 369, 36 Pac. 93, 38 Pac. 43.

The plaintiff must fail in this action, because he must be deemed to have consented to the diversion of the waters by his own act in assisting in the operation. He could not assist defendant in wrongfully diverting the waters from these springs, and actively participate in the operation, and subsequently, knowing that the waters were thus diverted, and the flow through the lands of lower riparian owners thereby being somewhat diminished, purchase lands of such lower owners, and then turn around and compel the defendant to pay damages for a wrong that he had himself actively participated in.

If plaintiff had owned the lands in question at the time of the diversion of these waters, and had known nothing about it, and had taken no part in it, and not consented to it, or if he had subsequently purchased the lands, not knowing of the diminished flow of water through this brook, caused by the diversion to defendant's reservoir, he would have undoubtedly been entitled to equitable relief, even though his damages were merely nominal. Duesler v. City of Johnstown, 24 App. Div. 608, 48 N. Y. Supp. 683.

But the plaintiff must fail here, for the single and sufficient reason that, whatever damages may have resulted to the lands in question by reason of the diminished flow of water caused by defendant's diverting a part of it, plaintiff himself actively participated in such diversion, and knew all about it, before he purchased the lands in question, took that into consideration when he made the purchase, and now is precluded from recovering damages which were occasioned by a wrongful act in which he was an active participator.

The complaint must be dismissed upon the merits, with costs. Judgment may be entered accordingly.