THE TRUSTEES OF THE FREEHOLDERS AND COMMONALTY OF
THE TOWN OF BROOKHAVEN, Appellants, v. EGBERT T.
SMITH, et al. Respondents.

To constitute an equitable estoppel it is not necessary that there should be
false representations or concealment of material facts, or that the party
sought to be estopped should design to mislead; it is sufficient if his
act was voluntary and calculated to mislead, and actually has misled
another acting in good faith.

A declaration which might not amount to an estoppel at the time it was
made, may become such by ratification or acquiescence,

If one is induced to purchase lands by the acts or representations of
another designed to influence his conduct and creating a reasonable
belief on his part that he is thereby acquiring a valid title to the same,
under which he acts, the party who thus influenced him is estopped from
setting up title in himself, existing at the time of the purchase, against
that of the purchaser

In an action to recover lands under water of Great South bay, Long Island,
plaintiff claimed title under the Nicholls charter of 1666, and the Dongan
charter of 1686, to the inhabitants and freeholders of the town of Brook-
haven; defendants claimed under two Indian deeds, dated April 8,
1692, and April 9, 1693, and a patent from the governor-in-chief of the
Province of New York to S., dated October 9, 1693, which included the
land in question. Defendants proved from the town records the follow-
ing facts: At a town meeting held March 29, 1693, it was voted that S.
might purchase and peaceably enjoy the lands covered by the said
grants. At a meeting of the trustees of said town, held November 27,
1693, S. "did cause his patent to be read before the trustees above said,
and each and every one did declare that they had nothing to object
against the limits, bounds, powers, privileges, within the said patent con-
tained." On May 1, 1694, "being election day," S. caused his patent
to be publicly read before the freeholders of the town, and it was "voted
and agreed by the trustees and freeholders above said, that they do on
the towns behalf agree, and forever acquiese in the limits and bounds
of the said patent." On September 21, 1693, S. and the trustees of the
town entered into an agreement which recited the purchase by S., with
consent of the town, of said lands and then fixed and defined the north
boundary line between the lands of S. and of the town. It also appeared
that, on the supposition that he had title, S. entered into possession, and
he and his descendants have had undisputed possession since. *Held*,
that plaintiff was estopped from claiming title to the land; that to con-
stitute the estoppel it was not essential that the declaration of the town
as to its title should have preceded the date or delivery of the deed;

that the various declarations of the town through its trustees and town. meetings must be construed as a single representation; also, that no distinction was to be made between the upland and the bay.

Plaintiff claimed that there had been such a user by the town of the bay as indicated that title thereto was in the town by acquiescence of all parties; to establish such user they introduced in evidence certain resolutions of the trustees of the town in reference to the control and regulation of fishing in the bay, beginning in 1759, and ending in 1768; also acts of the inhabitants of the town in taking fish and oysters from the bay. There was no evidence that anyone ever acted under these resolutions, or that they were ever brought to the knowledge of S., or that he ever heard of them. The evidence that the inhabitants of the town took fish from the bay was confined mainly to the period between 1862 and 1879, when the town under an agreement with defendant S., controlled the bay. A few instances prior to 1862 were proved, but it was not shown that the persons acted under authority from the town. There was no evidence that defendant S., or any of his ancestors, ever by word or act admitted the right of the town to control the fishing in the bay. In 1862 the town, under an agreement with defendant S., took from him a deed of the property in question; this agreement was subsequently annulled by the parties thereto. *Held,* that the evidence failed to show user by plaintiff; and that a refusal to submit the question to the jury was not error.

*Trustees etc.,* v. *Strong* (60 N. Y. 56); *Hand* v. *Newton,* (92 N. Y. 88), distinguished.

(Argued January 22, 1890; decided March 11, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made February 15, 1887, which affirmed a judgment in favor of defendant, entered upon a verdict directed by the court.

This action is in the nature of ejectment to recover land under water of a part of Great South bay, Long Island.

The plaintiff's title rests upon two colonial charters granted to the inhabitants and freeholders of the town of Brookhaven.

The first was granted March 7, 1666, by Governor Nicholls, and conveyed " all that tract of land which already hath been or that hereafter shall be purchased for and on behalf of the said town, whether from the native Indian proprietors or others, within the bounds and limits hereafter set forth and expressed."

The said tract extended " north to the Sound and south to the sea or Main Ocean " and included the greater part of the

large body of water lying on the south side of Long Island and known as the Great South bay.

The second charter was granted by Governor Dongan, December 27, 1686, and was confirmatory of the Nicholl charter. It granted the same tract of land together with " the marshes, swamps, rivers, waters, lakes, ponds, creeks and harbors," etc. " Saving to his most sacred Majesty aforesaid his heirs and successors all the tracts and necks of land that lieth to the south within the limits and bounds aforesaid that remain unpurchased of the native Indians."

The defendant Egbert T. Smith made his title through two Indian deeds, dated respectively April 8, 1692, and April 19, 1693, made to William Smith, defendant's ancestor, the first of which covered the premises in dispute, and a deed or patent from Benjamin Fletcher, Captain-General and Governor-in-Chief of the Province of New York to William Smith, dated October 9, 1693.

He further introduced in evidence in support of his title, the following extracts from the public records of the town :

" Town and William Smith.

"At a town meeting upon the 28th day of March, 1693, Col. William Smith of Brookhaven, did then and there acquaint the town as he did before that with the Governor's license he had purchased and intended to purchase divers' tracts of land unpurchased of the Indian natives by the town and within the limits of their patent and reserved to their Majesties by their patents, and did require to know whether the town laid any claim to the same or not and whether they were content that he the said Smith should purchase and peaceably enjoy the same. Voted and agreed that the above said Col. Smith may purchase and peaceably enjoy as aforesaid."

" At a meeting of the Trustees of the freeholders and Commonalty of the Town of Brookhaven upon the 27th day of November, 1693 ; at the same time Col. William Smith did cause his patent to be read before the Trustees above said, and each and every of them did declare that they had nothing to object against the limits, bounds, powers, privileges, within the said patent contained."

" Upon the first day of May, 1694, being election day, Col. William Smith caused his patent to be publicly read before the freeholders of the Town. It is voted and agreed by the Trustees and freeholders above said, that they do on the town's behalf agree and forever acquiesce in the limits and bounds of the said patent, and do assent and consent to the powers, privileges and immunities and exemptions therein contained so far as the same may anyways concern the Township, saving to the several particular inhabitants such shares of meadow at South Bay by them unsold, as the same was laid out to them within the limits and bounds aforesaid."

On September 21, 1693, the said William Smith and the trustees of the town entered into an agreement in writing which recited the purchase by Smith with the consent of the town of certain tracts of land within the limits of the town's patent and which had never been purchased by the town from the Indians, and then fixed and defined the north boundary line between Smith's land and the lands of the town.

The defendant Egbert T. Smith succeeded to Col. Wm. Smith's title. The other defendants are lessees of Egbert T. Smith.

The trial court directed a verdict in favor of the defendant to which the plaintiff excepted.

Other facts are stated in the opinion.

*James C. Carter* for appellant. The patent to the town of Brookhaven, granted in the year 1686 by Governor Dongan, confirming the prior patent granted by Governor Nichols in the year 1666, conveyed the fee in the premises in question to the plaintiffs. (*Rogers* v. *Jones*, 1 Wend. 237; *People* v. *Schermerhorn*, 19 Barb. 140; *Brookhaven* v. *Strong*, 60 N. Y. 56; *Hand* v. *Newton*, 92 id. 88; *Johnson* v. *McIntosh*, 8 Wheat. 511; Angell on Tide Waters, 47; *People* v. *Dibble*, 16 N. Y. 203, 212; *Martin* v. *Waddell*, 16 Pet. 367; Shep. Touchstone, 77, 78; *Craig* v. *Wells*, 11 N. Y. 315, 321; *Borst* v. *Empie*, 5 id. 33, 38; *Sisson* v. *Cummings*, 35 Hun, 22; *Coleman* v. *Beach*, 97 N. Y. 545; 3 R. S. [7th ed.] 2205, § 2; *Delaware Railroad Tax*, 18 Wall, 206, 226; *Dermott* v. *State*,

99 N. Y. 102, 107; *Sidell* v. *Grand Jean*, 101 U. S. 412; *D. & P. R. R. Co.* v. *Litchfield*, 23 How. Pr. 66; *C. R. B. Co.* v. *W. B. Co.*, 11 Pet. 420; *Woods Case*, 1 Coke, 40, 43, 51; *King* v. *Capper*, 5 Price, 217, 260.) If the defendants were entirely right in their interpretation of the language of those ancient patents, nevertheless the force of the user which was proved, really extending over a period of two centuries, would establish the plaintiff's title. (*Livingston* v. *Ten Broeck*, 16 John. 14; Hale *de juris* Maris, Hargrave's Law Tracts, 33; *Jackson* v. *Wood*, 13 John. 347; *Adams* v. *Frothingham*, 3 Mass. 360; Broom's Leg. Max. 300; *Codman* v. *Winslow*, 10 Mass. 149; *Bayard* v. *Goodwin*, 2 id. 475.)

*Nicoll Floyd* for appellants. The town of Brookhaven was by its patents vested with the absolute ownership of the navigable tide-waters and the soil beneath them, within its limits. (*Cavazoz* v. *Trevino*, 6 Wall. 773; *Groot* v. *Moak*, 26 Hun, 380; *Adams* v. *Frothingham*, 3 Mass. 382; *Com.* v. *Roxbury*, 9 Gray, 492; *Jackson* v. *Muers*, 3 Johns. 388; *Martin* v. *Waddell*, 16 Pet. 411, 412; Coke's Inst. 4b; Hall on Seashores, 2–6; Chitty on Prerog., chap. 8, § 2; Angell on Tide-waters, 20, 247; Gould on Waters, § 4; *Arnold* v. *Mundy*, 1 Halsted, 1; *Martin* v. *Waddell*, 16 Pet. 367; *Gough* v. *Bell*, 1 Zab. 156; 2 id. 441; 3 id. 624; *Barney* v. *Keokuk*, 94 U. S. 324; Kent's Com. 343, 373; *Furman* v. *Mayor, etc.*, 5 Sand. 16; 10 N. Y. 567 *Rogers* v. *Jones*, 1 Wend. 237; *Brookhaven* v. *Strong*, 60 N. Y. 56; *Hand* v. *Newton*, 92 id. 88; *Robins* v. *Ackerly*, 91 id. 98; *Denton* v. *Jackson*, 2 Johns. Ch. 320; *Foster* v. *Rhoads*, 1 Johns. 191; *Johnson* v. *McIntosh*, 8 Wheat. 543; *Lansing* v. *Smith*, 4 Wend. 9; *Gould* v. *H. R. R. R. Co.*, 6 N. Y. 522; *People* v. *Tibbetts*, 19 id. 523; *Ex parte Jennings*, 6 Case, 518; *Smith* v. *City of Rochester*, 92 N. Y. 463; *Steers* v. *City of Brooklyn*, 101 id. 51; *Lawrence* v. *Delano*, 3 Sand. 333; Malone on Real Prop. 149; Black. Com. 37; *Jackson* v. *Lawton*, 10 Johns. 23; *Wilson* v. *Imloes*, 11 G. & J. 351.) The ownership of the disputed territory once vested in the town under its patent, it remains there,

unless it has been disposed of by the town voluntarily, or has been lost by operation of law. It has never been disposed of, nor has it been lost. (*People* v. *Van Rensselaer*, 9 N. Y. 291; Bigelow on Estoppel, 484; *Waring* v. *Sanborn*, 82 N. Y. 604.) The court erred in holding at the trial that the grant in the patent to the town of Brookhaven was limited to such lands as had been or should be thereafter purchased by the town and the waters, etc., appurtenant thereto, and that from the Smith patent it was to be inferred that the town had never purchased the tract of land therein granted, and therefore, never got title to the bay, creeks, beach, etc., appurtenant to that tract of upland, and hence no title to the *locus*. (*Rogers* v. *Jones*, 1 Wend. 237; *Brookhaven* v. *Strong*, 60 N. Y. 56; Laws of 1813, 46; *Hand* v. *Newton*, 92 N. Y. 88.)

*Wilmot M. Smith* for respondents. There was no error in the court refusing to submit the case to the jury upon the requests of the plaintiffs. (*Herring* v. *Hoppock*, 15 N. Y. 413.)

BROWN, J. This court decided in *Trustees of Brookhaven* v. *Strong* (60 N. Y. 56), and again in *Hand* v. *Newton* (92 N. Y. 89), that under the town charters it had title to the land under the waters of the navigable bays and harbors within the limits defined in those instruments. Those cases, however, afford no aid to the solution of the question now presented, for the reason that in the first action the patent under which defendant claims was a part of the town's title to the land then in dispute, and the second involved the title to land under water on the north side of the island entirely outside of the limits of defendant's grant.

The learned counsel for the appellant claims that the patent to William Smith did not in terms convey any part of the bay. This proposition cannot be sustained. The grant recites the issuing of a warrant to the surveyor-general of the province to survey and lay out, several necks and tracts of land, beach, bay, etc., situate on the south side of the island formely called Long Island, etc. That said surveyor-general had surveyed

and laid out "said necks and tracts of land  *  *  * bay and islands within said bay bounded westward from the main sea or ocean etc." It then grants to Col. William Smith and his heirs the "afore recited necks and tracts of land within the respective bounds before mentioned, together with the waters, *rivers, lakes, creeks, harbors, bays,* islands, fishing fouling etc., and all rights  *  *  * privileges  *  *  * and appurtenances whatsoever to the aforesaid necks and tracts of land, bay, beach and islands within said bay" etc., etc.

It will thus be seen that the bay is granted by express terms.

The bay is not described as appurtenant to the neck and tracts of land, but the bay is conveyed with all the benefits and privileges appertaining thereto.

Almost identical language is used in the Dongan charter to the town and this court held it sufficient to convey the title to land under water (*Brookhaven* v. *Strong, supra*), and that decision must control the construction of the grant to Smith.

The land in dispute being, therefore, within the grant to William Smith, I think the case presents all the elements of an equitable estoppel against the town. It is not necessary, as is claimed in one of the briefs submitted to us by the appellant, to constitute an equitable estoppel that there should be a false representation or concealment of material facts. Nor is it essential that the party sought to be estopped should design to mislead. If his act was voluntary and calculated to mislead and actually has misled an other acting in good faith that is enough. (*Man'f'rs. & Traders' Bank* v. *Hazard*, 30 N. Y. 226; *Cont'l. Nat. Bk.* v. *Nat. Bk. Commonwealth*, 50 N. Y. 575.) Nor is it essential that the declaration of the town as to its title to the land described in Smith's patent should have preceded the date or delivery of the deed, (*Cont'l. Nat. Bk.* v *Nat. Bk. of Commonwealth, supra*, 583–598; *Casco Bank* v.*Keene*, 53 Me. 103.)

If those declarations affected the conduct of Smith, with reference to the land purchased, so that it would be unjust or injurious now to those who have succeeded him to permit the plaintiff to set up its title contrary to the truth of its declara-

tion, it is sufficient. That which might not amount to an estoppel at the time the declaration is made, may become such by ratification or acquiescence. (Bigelow on Estoppel [5th ed.] 650; *Faxton* v. *Faxon*, 28 Mich. 159.)

The authorities in this state are all harmonious on the subject of estoppel *in pais*.

When a party, either by his declarations or conduct, has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission if the consequence would be to work an injury to such third person or to some one claiming under him. ( *Wendell* v. *Van Rensselaer*, 1 Johns. Ch. 344, 354; *Storrs* v. *Barker*, 6 id. 166; *Town* v. *Needham*, 3 Paige, 545; *Dezell* v. *Odell*, 3 Hill, 215; also see dissenting opinion of Judge Bronson approved in 47 N. Y. 500; *Brown* v. *Sprague*, 5 Denio, 545; *Plumb* v. *Cattaraugus C. M. Ins. Co.*, 18 N. Y. 393; *Welland Canal Co.* v. *Hathaway*, 8 Wend. 483; *Thompson* v. *Blanchard*, 4 N. Y. 303; *Cont'l Nat. Bk.* v. *Nat. Bk. Commonwealth*, 50 id. 575; *Armour* v. *M. C. R. R. Co.*, 65 id. 111–122; *N. Y. Rubber Co.* v. *Rothery*, 107 id. 310–316.)

Numerous cases where this principle has been applied to real estate are collected in Washburn on Real Property (vol. 3, chap. 2, § 6), to which reference is made. When so applied it is as effectual as a deed would be from the party estopped.

The general rule deduced from all the authorities, is that if one is induced to purchase land by the acts or representations of another designed to influence his conduct, and creating a reasonable belief on his part under which he acts that he is thereby acquiring a valid title to the same, the party who thus has influenced him is estopped from setting up his own title, existing at the time of the purchase, against that of the purchaser.

The various declarations of the town through the trustees and town meetings must be construed as a single representation. They were all *in pari materia* and had one purpose, viz., to inform Smith that the town made no claim to the land he desired to purchase.

The "necks and tracks" of land reserved to the Crown by the Dongan charter could not be identified except by a declaration by the town, or through the medium of some legal proceedings against the town. We have the fact that when the survey had been completed and embodied in the patent, it was read to the town meeting and approved and the town voted "to agree and acquiesce in the bounds of the patent."

It described particularly "the bay," and the patent obligated Smith to pay an annual quit rent to the Crown.

There can be no reasonable doubt that Smith sought and obtained the resolutions of the town meetings as muniments of his title, and that they were intended by the town to be such. They were calculated to and undoubtedly did influence the purchase, else why was the inquiry made and answered.

In the most deliberate manner possible the town not only disclaimed ownership, but agreed and acquiesced in the purchase, and in the boundaries of the land conveyed. I am unable to see any distinction to be made between the upland and the bay. Both were conveyed by the same instrument, and the resolution of the town meeting applied as much to one as to the other.

In reliance upon the declaration of the town, and on the supposition that he had title, Smith entered into possession, and he and his descendants, on the faith of these declarations, have had undisputed possession of the land for nearly 200 years. The town cannot now be permitted to deny the truth of its declarations and assert its title to the premises in dispute.

To repel, however, the presumption arising from the transactions I have alluded to, so far as it is made applicable to the waters of the bay, the appellant appeals to the acts of the parties under their respective patents; and it is claimed that the evidence shows such user by the town of the bay as indicates that title thereto was in the town by the acquiescence of all parties, and that if the evidence on this branch of the case was not conclusive, it was at least of such a character as to require the submission of the question to the jury.

The application of the rule which denies the right of the

appellant to assert at the present time its title to the bay, depends very largely upon its acquiescence in the ownership of Smith and his descendants.

I have assumed such acquiescence in the view I have thus far taken of the case, but if the fact be as claimed by the appellant, the conclusion I have reached probably could not be sustained in the absence of a finding on that question by the jury.

The evidence of the question of user is of two kinds : *First.* Certain resolutions of the trustees of the town in reference to the control and regulation of fishing in the bay ; and, *second,* acts of the inhabitants of the town in taking fish and oysters from the bay.

The first covers a period of about ten years only, beginning in 1759 and ending in 1768.

There is no evidence that any one ever acted under the resolutions of the trustees, and none that they were ever brought to the knowledge of the defendant's ancestors, or that he ever heard of them. The evidence that the inhabitants of the town took fish from the bay is confined mainly to the period between 1862 and 1879, when the town, under an agreement with the defendant Egbert T. Smith, controlled the bay.

There are a few instances earlier than 1862, but it was not shown that the persons acted under authority from the town. I can find no evidence in the case that the defendant Smith, or any of his ancestors, ever, by word or act, admitted the right of the town to control the fishing in the bay, and in the absence of evidence tending to show that fact, no resolutions passed by the trustees of the town, and no acts of the inhabitants in taking fish from the bay, can be regarded as indicative of title in the town.

There is no fact in the record inconsistent with the claim of the original patentee, or any of his descendants, of that full title which was conveyed by the original grant.

We think the evidence fails to show any user of the property in dispute by the town.

For upwards of sixty years after the grant to William Smith, so far as the case informs us, if there was not absolute acquiescence in Smith's title, there was at least no claim or assertion by the town of a right to control the bay.

The greater part of the bay was, during the last century, conveyed to the town by the grandson of the original patentee, and the town now holds such rights as it has there under those conveyances.

In 1862 the town took from the defendant Egbert T. Smith a deed for the property now in dispute, agreeing, in consideration of that conveyance, to lease out the privileges in the bay and pay one-half the net proceeds to said defendant.

The town records inform us, with reference to that conveyance, that "Hon. Egbert T. Smith offered to release to the town all that part of the bay, etc., on the same terms as his ancestor released to the town the East bay in 1790, so that hereafter the town should have full control of all the bays on the south side of the island." It was thereupon resolved " to accept the offer," and the clerk was directed to embrace in one indenture the conditions of the grant to be signed by both parties.

Smith becoming dissatisfied with the agreement and, threatening litigation, the agreement was annulled and the property reverted to him.

This agreement established a dividing line between the land in dispute and the East bay.

We think all these transactions, from the date of the patent to Col. William Smith to the annulling of the last agreement between the parties, speak one language on the question of title and show acquiescence on the part of the town in the grant to Smith.

The few resolutions of the board of trustees passed 150 years ago, and the few instances of the town's people asserting a right to fish in the bay, established only that there was occasional dissatisfaction and a show of resistance to Smith's title.

But the right under that title was always maintained and exercised by exacting small payments for individual privileges and by occasional leasing of the bay.

There was, on the evidence, no question for the jury, and the court rightly disposed of the case on the legal questions alone.

The judgment should be affirmed, with costs.

All concur, BRADLEY and HAIGHT, JJ., in result.

Judgment affirmed.