## HORTON v. ERIE PRESERVING CO.

(Supreme Court, Appellate Division, Fourth Department.  January 5, 1904.)

**1. SUBSCRIPTIONS—DELAY—ESTOPPEL.**

One subscribing to a bonus to secure erection of a factory, having stood by and seen it constructed after the time provided in the original contract between the manufacturer and the citizens' committee, but within the time as extended by the committee, without attempting to cancel his subscription, is estopped to claim release from his subscription by reason of the delay.

Appeal from Trial Term, Chautauqua County.

Action by William B. Horton against the Erie Preserving Company.  From a judgment, plaintiff appeals.  Affirmed.

The action was commenced on the 2d day of February, 1903, to recover for produce sold and delivered to the defendant during the season of 1902 under a contract in writing bearing date the 10th day of February, 1902, by the terms of which the plaintiff agreed to raise and deliver to the defendant, at its factory, the peas and corn which might be grown during the season of 1902 upon certain lands of the plaintiff, at a price specified in the contract; and the defendant, on its part, agreed to pay to the plaintiff any balance that might remain unpaid upon such crop or produce on the 22d day of January, 1903. Upon such date, under the terms of the contract, there was concededly due and owing to the plaintiff a balance of $175.23.  The plaintiff demanded payment of said sum from the defendant, which was refused, and, instead, the defendant tendered to the plaintiff the sum of $141.89 and $1.63, as interest, which the defendant claimed was the full amount of its indebtedness to the plaintiff; the defendant claiming the right to deduct from the amount due and owing to the plaintiff under the contract above referred to the sum of $33.34, being the amount, as is claimed, for which the plaintiff became indebted to the defendant by virtue of a subscription or agreement made by him, and which amount was set up as a counterclaim in defendant's answer. Such counterclaim, by the judgment appealed from, was allowed to the defendant, and its allowance raises the only question presented for review by this appeal.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

George E. Towne, for appellant.

Charles J. Bissell, for respondent.

McLENNAN, P. J.  The principal facts are not in dispute.  On the 21st day of November, 1899, the Business Men's Association of Irving, Chautauqua county, N. Y., entered into an agreement in writing with the defendant, signed by the president and secretary of such association, which provided, in substance, that a committee of such association, named in such agreement, would procure a conveyance to the defendant of 15 acres of land therein described, which was a part of the Seneca Reservation, and was owned by one Dennis, a Seneca Indian, and would procure the transfer of the title to such lands to be approved by act of Congress, which was necessary in order to perfect the same.  Ratification or confirmation by Congress was agreed to be procured on or about January 1, 1900.  Such committee also agreed to secure "from the residents and farmers of Erie and Chautauqua Counties, on or before February first, 1900, a subscrip-

tion list amounting in value to at least the sum of ten thousand
($10,000) dollars, said sum to be paid to said Preserving Company in
fruits, produce, labor, team work or cash, within a period of three
years from the time said Erie Preserving Company shall commence
the operation of a canning factory on the above site." The defendant
company, on its part, agreed to locate a canning plant on said site,
and to begin canning operations thereat during the season of 1900.
On November 23, 1899, by another instrument in writing made be-
tween the parties, said first agreement was modified so as to provide
that in case the committee did not secure in subscriptions the full
amount of $10,000, if they used their best endeavors in that regard,
the amount which they did raise would be accepted by the defendant
in lieu of such $10,000, and would be regarded as a compliance by the
committee with the obligation imposed upon it under the first con-
tract.   On said 23d day of November, 1899, the defendant executed
or caused to be executed and delivered to the committee a bond con-
ditioned, in substance, for the faithful performance by the defendant
of the obligations which it had assumed under such contract. Imme-
diately after the execution of the contracts in question, and the de-
livery of the bond executed by the defendant, the committee of the
Business Men's Association undertook to secure subscriptions from
the farmers of Erie and Chautauqua counties, as they had obligated
themselves to do by the provisions of such contracts. The plaintiff,
with many others, thereupon signed a subscription or agreement by
which he obligated himself to pay to the defendant the sum of $100
in produce during the years 1900, 1901, and 1902, equally, "for the
purpose of inducing said Erie Preserving Company to locate their
new canning factory at Irving, N. Y." It was recited in such sub-
scription or agreement that the defendant had shown willingness to
locate a canning plant at Irving, N. Y., by giving a committee of the
citizens of the village of Irving a bond in the sum of $1,000 to show
its good faith, "provided a certain suitable site can be secured, and
a reasonable subscription signed by the produce growers, workers
and others who will be directly benefited by the location of their
plant and business at Irving." The plaintiff insists that such sub-
scription or agreement signed by him was not enforceable in favor of
the defendant, for the reason that the canning factory, which, under
its agreement with the committee, was to have been erected and ready
for operation during the season of 1900, was not so erected and put
in operation.   Of course, the defendant could not erect and put its
factory in operation upon the site described in the contract until title
thereto was perfected, and that, as we have seen, depended upon
ratification by act of Congress.   Immediately after the execution of
the contracts in question the committee diligently set to work to pro-
cure title to the premises upon which the canning factory was to be
erected.   It procured a conveyance from Dennis, and the approval of
the same by the Council of the Seneca Indians, and a bill was intro-
duced in Congress for the ratification of such title.   All parties, so
far as appears, were equally zealous in procuring the passage of such
act, but for some reason it was not passed at that session of Congress,
nor until the 27th day of February, 1901.   After the title in the de-

fendant had been confirmed by the passage of such act, the defendant went on and erected the canning plant upon the premises in question, and in all respects in accordance with the requirements of the contracts which it had entered into with the committee; the subscriptions of the plaintiff and other subscribers having been previously delivered to the defendant.

The evidence clearly indicates that when it was found that the lease could not be, or was not, ratified by Congress within the time specified in the contract, the committee urged the defendant to still go on with the enterprise and erect a canning factory, and that all the parties to the agreement assisted as far as possible in procuring the ratification of such lease under the date above referred to. In other words, the defendant was given to understand by the committee with which it contracted that if the lease was approved by act of Congress, although at a date subsequent to that mentioned in the original contract, all the terms of such contract would be regarded as of full force and effect. In fact, as between the committee and the defendant, there is apparently no dispute. The time when the lease should be confirmed was not regarded as of the essence of the agreement, but the purpose was to secure a canning factory to be erected upon the premises in question at the earliest time practicable; and immediately upon the ratification of the lease of the premises, which was in February, 1901, the defendant entered upon the construction of its plant, and was ready for business for the season of 1902.

The defendant, in the erection of its canning factory, has expended upwards of $50,000; and we think it must be held, upon the evidence, that such expenditure was induced by the subscriptions made by the plaintiff and others similarly situated, and thus such subscriptions became valid and binding obligations in favor of the defendant. Keuka College v. Ray, 167 N. Y. 96, 60 N. E. 325.

The chief contention on the part of the plaintiff is that the failure of the defendant to build the factory in 1900 released him from his subscription. The failure to so build was not due to any neglect or omission on the part of the defendant. It resulted because of circumstances which, as appears by the evidence, neither of the parties to the contract could control. The defendant was ready and willing to proceed with the erection of its canning plant as soon as title was obtained to the premises upon which it was to be built; and we think the plaintiff is not in a position to assert the invalidity of his subscription because of the failure of the defendant to erect its plant within the time specified in the contract. After the time in which defendant had agreed to erect its factory had elapsed for the reasons above indicated, the plaintiff stood by and saw it erected, presumably because of his and other subscriptions which were to contribute to and insure such erection, without in any manner protesting or attempting to cancel his subscription because such plant was not erected in 1900 instead of 1901. He stood by and saw the work go on, knowing as he must that it was in reliance, in part at least, upon the subscriptions which he and his neighbors had made, amounting in the aggregate to over $7,000; and he should be estopped from now claiming that his subscription was invalid, and of no force or effect, because of de-

fendant's failure to erect and put in operation its factory at the time
specified in the original agreement. Trustees, etc., v. Smith, 118 N. Y.
640, 23 N. E. 1002, 7 L. R. A. 755. The time when the factory in
question was to be erected was not of the essence of the contract.
The true meaning of the agreement was that the defendant would
erect such factory as soon as title could be obtained to the premises
upon which it was to be built. Such plant was regarded by the
plaintiff and other subscribers, as recited in the instrument executed
by them, of great value to them and to the community; and we think
it ought not to be held that they should be relieved from the obliga-
tions assumed by them, simply because the factory in question was not
erected at the time specified in the contract entered into between the
defendant and the committee, when, as clearly appears, the time of
performance was extended by the committee.

It is also insisted that, when the plaintiff entered into the contract
for the sale of his produce to the defendant, the agent of the defend-
ant represented to him that no part of the value of the produce so
bought would be deducted by reason of the subscription or agreement
which the plaintiff had made. There is no evidence tending to show
that defendant's agent had any right or authority to make such agree-
ment, and there is no evidence which indicates that when the defend-
ant received the produce of the plaintiff it knew or had any reason to
believe that its agent had made any such representation or agreement.
Besides, the plaintiff in this case declared upon a written contract, and
it is nowhere alleged that it was induced by fraud, or that it contained
any provision which would bar the defendant from asserting any claim
which existed in its favor against the plaintiff, and which, under the
Code, was a proper subject of counterclaim.

We think the evidence fully justified the conclusion that a proper
tender was made of the full amount of the defendant's indebtedness to
the plaintiff. It follows that the judgment appealed from should be
affirmed, with costs.

Judgment affirmed, with costs. All concur.