FOSTER DICKINSON, by CHARLES A. DICKINSON, His Guardian ad Litem, Appellant, *v.* LEONORA BLAKE and JONAS TOWNSEND, Respondents, Impleaded with Others.

Third Department, December 7, 1906.

Mortgage — when remaindermen estopped from asserting that mortgage by life tenant covered their interests.

When remaindermen of full age having knowledge that their mother has only a life interest in the property consent that she give a mortgage on the property to raise money for a necessary surgical operation, and, acting through an agent, represent to the mortgagee that the lands belong to the mother, they are thereafter estopped from denying the validity of the mortgage or that it was a lien upon their interest in the property. Both the mortgage and the foreclosure thereof are valid and effectual against them or their descendants who are made parties to the foreclosure.

PARKER, P. J., dissented.

APPEAL by the plaintiff, Foster Dickinson, by Charles A. Dickinson, his guardian ad litem, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of Warren on the 8th day of December, 1905, upon the decision of the court, rendered after a trial at the Warren Trial Term, dismissing the plaintiff's complaint, before the court without a jury.

*James H. Bain*, for the appellant.

*D. J. Sullivan*, for the respondents.

Judgment affirmed, with costs, on the opinion of Justice JOHN M. KELLOGG, at Trial Term.

All concurred, except PARKER, P. J., dissenting; KELLOGG, J., not sitting.

The following is the opinion of Mr. Justice KELLOGG:

KELLOGG, J.:

By the will of Bentley J. Harris, who died in May, 1879, he gave the use of his property to his wife, Phœbe, for her life and the remainder to his children Addie A., Leonora and Carmi. In 1892 the mother was in a critical condition and it was necessary for her to submit to an expensive and dangerous surgical operation. She and her three children, the sons-in-law and daughter-in-law, were present with the doctors discussing the expense, and whether money could be furnished to procure the operation. She had no other property except her interest in the house and lot in question and was then living with one of her daughters. Her age does not definitely appear, but the eldest child was born in 1857. It was then in fact stated by her and her children, in the presence of Charles Dickinson, the husband of Addie A., that the only way of obtaining the money was by a mortgage of the house and lot. Each of the children said they consented to it, and urged that it be done, as her life must be saved even though it took all the property. Haste was necessary, and Charles Dickinson applied to one Willard to obtain the money upon mortgage. They went to one Keefe, the attorney of Willard. Dickinson stated that a search was not necessary; that the title was known, and a mortgage was prepared for Mrs. Harris to execute. She executed it, the money was furnished and the operation had. Mrs. Harris lived until October, 1898, and in 1901 the mortgage was foreclosed, treating the property as the property of Mrs. Harris and making her children and the descendants of those deceased parties to the action as having interests subsequent to the mortgage. The property was sold; a surplus remained, and in surplus-money proceedings the daughter Leonora Blake, as

administratrix of the mother and personally, obtained enough to pay the unpaid debts of the estate, and one-third of the remainder she received herself. This proceeding treated the property sold as the property of Mrs. Harris. The husband of the said Leonora purchased the property at such foreclosure sale. The daughter Addie A. Dickinson died before the foreclosure, leaving two children, one of whom is the plaintiff and the other a defendant, both of whom were parties to the foreclosure action. It appears affirmatively that the son Carmi and the daughter Leonora in fact knew at the time and prior to the conversation about the mortgage and the execution of the mortgage that the mother had only a life estate, and that they each owned an undivided one-third of the remainder. The daughter Addie A. was then about thirty-six years of age. The will was probated soon after the death of the testator, and the family knew its terms, and I find as a fact that at the time of the conversation about the mortgage, and prior to the mortgage, all of the children of Mrs. Harris knew that she had only a life estate in the property, the children having the remainder, and that the life estate was not a sufficient interest in her precarious health upon which to raise $400, the amount necessary for the operation, and that they each intended that their interest in the property should be mortgaged to raise the money for this operation, and they intended that Mr. Dickinson, the son-in-law, should negotiate and arrange the loan, and he was their agent when he applied to Mr. Willard for the loan of the money. They did not know as a matter of law but that the mother could execute the mortgage and bind the real estate, but they did know that the mortgage was to be a lien upon the real estate and cover their interests therein. The mortgagee, Willard, and his attorney, at the time of making said loan, believed the mortgage was valid and effectual, and were induced by the said Dickinson to believe that it was a first lien upon the entire property, and he intended to and caused them to so believe. It would not now be equitable to allow either of the children to deny that the mortgage did in fact cover the entire property, or to deny that Mr. Dickinson fairly represented them in making the loan as they intended that their interest should be covered by the mortgage. What he did in making the loan and mortgage should be treated as their acts. The mistake made by Mr. Dickinson, who was their

agent- in doing the business, should not prejudice the mortgagee. They should be treated as doing what they intended to do, and the mortgage should be given the effect which they expected it to have when it was agreed by them it should be made. They are estopped from denying that the mortgage became and was a lien upon their interest in the property. To constitute an equitable estoppel it is not necessary that there should be a fraudulent intent; but if the parties have caused another person to do an act relying upon their conduct, which he would not otherwise have done, they cannot now be permitted to repudiate such conduct. The injury to the mortgagee is just as great whether the children of Mrs. Harris knew at the time they consented to the mortgage that they were the owners of the property or not. They did consent to it and were parties in bringing it about, and, if they did not know, they were clearly negligent in not knowing. In any event it is inequitable to allow them now to deny it, considering the transaction as it occurred. (*Trustees, etc.*, v. *Smith*, 118 N. Y. 634; *Mattes* v. *Frankel*, 157 id. 603; *Trenton Banking Co.* v. *Duncan*, 86 id. 221, 229.)

"The rule has sometimes been stated as though it were universal, that an actual knowledge of the truth is always indispensable. It is, however, subject to so many restrictions and limitations as to lose its character of universality. It applies in its full force only in cases where the contract creating the estoppel consists of silence or acquiescence. It does not apply where the party, although ignorant or mistaken as to the real facts, was in such a position that he *ought* to have known them, so that knowledge will be imputed to him. In such case, ignorance or mistake will not prevent an estoppel. Nor does the rule apply to a party who has not simply acquiesced, but who has actively interfered by acts or words, and whose affirmative conduct has thus misled another. Finally, the rule does not apply, even in cases of mere acquiescence, when the ignorance of the real facts was occasioned by culpable negligence." (Pom. Eq. Juris. [3d ed.] § 809.)

The plaintiff and the parties similarly situated, therefore, are estopped from denying that the mortgage was a first lien upon the entire property and from denying that their interests in the property became and were subsequent to the mortgage. The mortgage

binding their interests was, therefore, properly foreclosed and is valid, and the mortgage and foreclosure are valid and effectual against them. What may be the liability, if any, of any of the parties with reference to the drawing of any such surplus money is not now here before the court and is not now determined. The complaint, should, therefore, be dismissed, with costs.