REBECCA WITHERELL, Respondent, *v.* EDWARD J. KELLY, Appellant.

Second Department, February 25, 1921.

Mortgages — foreclosure — equitable estoppel by representation that deficiency judgment would not be procured — appeal — Appellate Division cannot review decision of foreign court as to its jurisdiction in action in which deficiency judgment rendered.

The plaintiff in a foreclosure action is estopped from entering a deficiency judgment against the mortgagor where it appears that in reliance on the assurances of the plaintiff that there would be no deficiency judgment taken against him the mortgagor, with just grounds, remained inert and did not attempt to secure himself or protect himself against a deficiency judgment, but in fact facilitated it by stipulating that the action of strict foreclosure, one wherein there could be no deficiency, should be modified into one of sale.

As a rule, to constitute an equitable estoppel there must be a representation as to a fact past or present, but an estoppel will result where a statement

Second Department, February, 1921.                [Vol. 195.

relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act.

A positive statement by the plaintiff that a deficiency judgment would not be taken is not rendered the less positive by giving as a reason that the property would bring enough to cover the mortgage.

A statement by the plaintiff that " you need not bother about that; we wont bother you with any judgment," made in response to a statement by the defendant that " I do not want you to get any judgment against me," is a positive statement and not the expression of an opinion.

In an action on a deficiency judgment procured in a foreclosure action in Connecticut, evidence examined, and *held,* that the findings that the defendant herein was not misled by and did not rely on statements made by the plaintiff herein and was not thrown off his guard nor lulled to sleep thereby, and that no representations or statements were made to the effect that no attempt would be made to hold him personally liable for a deficiency, are not supported by, but are against the evidence.

*It seems,* that in this action on the deficiency judgment the Appellate Division cannot review the decision of the Connecticut court as to its jurisdiction over the defendant in the foreclosure action and as to its interpretation of the Connecticut statute.

APPEAL by the defendant, Edward J. Kelly, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 22d day of May, 1920, upon the decision of the court rendered after a trial at the Kings Special Term.

*Thomas J. Blake,* for the appellant.

*William Mason Smith* [*John Howard Keim* with him on the brief], for the respondent.

JENKS, P. J.:

The defendant, a resident of New York, owned a country house in Greenwich, Conn., bought in 1908 for $100,000, of which $40,000 was in cash and $60,000 was secured by mortgage. In 1915 or 1916 he was in arrears for the taxes and the interest on the mortgage. In 1918 the mortgagee, this plaintiff, began foreclosure. In general, the practice in Connecticut is strict foreclosure. If, however, any party to the action moves therein for foreclosure by sale, the court decrees it and appoints both appraisers of the value of the realty in view of the sale, and a committee to conduct the sale. This was done in that foreclosure case. The plaintiff had not served this defendant, but on December 11, 1918,

the defendant with others subscribed a stipulation made in that action. That stipulation consented to foreclosure by sale on January 18, 2 P. M., at Greenwich, Conn., determined the amounts of the judgment debt at $63,671.56, of the attorneys' fees at $600, consented to the appointment of certain persons as appraisers and as committee to sell, respectively. The appraisers valued the premises at $111,800. At the sale made on the day stipulated, the premises were sold to the mortgagee for $55,000 and a judgment for deficiency was entered against this defendant. This action on that judgment was tried by consent at Special Term. The court made findings of fact and conclusions of law to award judgment to the plaintiff and to dismiss on the merits the defenses of which one at least involved an equitable counterclaim.

The defendant in this action pleads several defenses. The only issue litigated which I shall consider involves conversations between the plaintiff and the defendant in which the plaintiff was represented by Shedd, admittedly her agent for all purposes.

The defendant testifies in part as follows: He had become in default in interest in 1915 or 1916. He did not recollect when he found out that foreclosure proceedings were contemplated. He had five or six conversations with Shedd. At one before January, 1919, Shedd said: " ' If you don't settle up and pay the back interest and the taxes on the property, we will sell it out.' I said, ' I don't care if you sell it out or not. I am sick and tired of the property, and have not got money enough to maintain it, and don't want to bother with it, but if it is sold I want to be cleared off entirely.' Q. What did he say? A. Why, he said, ' You will have no trouble about that,' he says, ' the property will bring the money all right.' He says, ' Only we want our money, we want to get our pay, what is due us.' I said, ' Well, I don't care what you do, so long as there is no claim against me, no afterclaps about this thing. I want to be through with it when I am done with it, and I will consent to anything you want me to, so far as that is concerned.' Q. What did he say to that? A. He said, ' There will be no deficiency judgment against you; we won't bother you any, because we think we will get our money out of it.' " On one occasion the defendant said to

Shedd: " If you sell this property I don't want any further —
I am willing you should sell it, and I don't want to have any
further business with it. I do not want you to get any judg-
ment against me." Shedd said: " Oh, you need not bother
about that; we won't bother you with any judgment." This
was " about July, 1918 or 1919." It could not have been in
19*19*, because the defendant testified that at the time of that
conversation the proceedings to foreclose the mortgage had
not been taken. And finally he says that he had several
conversations with Shedd between July, 1918, and the sale of
the property, which was held in January, 1919. The defend-
ant testified with reference to his conversations with Shedd:
" Q. Did you believe what he said? A. Certainly; I had no
reason not to believe it." The question as to whether or not
the witness could have raised the money to meet the indebted-
ness if he had believed there was to be a deficiency judgment
against him, was objected to and the answer stricken out.
" Q. You relied on what Mr. Shedd told you about there being
no deficiency? A. Certainly; otherwise I would not have
consented to sell. Q. And because of your reliance on what
he told you about there being no deficiency, what did you
do? A. I did not do anything, because I relied upon what he
said to me." The defendant also testified that he relied on
Shedd's statement that he did not want a deficiency judgment
against the defendant. The question whether, if he thought
that there would be a deficiency judgment against him, he
could have done anything to save the property, was objected
to as too speculative, the objection sustained and the answer
stricken out.

This testimony was not contradicted. Shedd was in court.
He was called as a witness by the defendant, but did not testify
as to the conversations. He was not called by the plaintiff.
The defendant had offered no resistance to foreclosure. He
had facilitated it. He had stipulated that the action of
strict foreclosure, one wherein there could be no deficiency,
should be modified into one of sale. There is nothing improb-
able that Shedd, with the prospect of a sale of realty officially
and conclusively assessed with a view of foreclosure sale at
$111,800 to satisfy a debt of $63,000, should have felt it
entirely safe to assure the defendant that there would be no

deficiency judgment against him. And, on the other hand, there is nothing under the circumstance unreasonable in the belief of the defendant of the truth of the assurance that plaintiff would not enter any deficiency judgment against him. The official determination of the value of the property for foreclosure sale was about $38,000 in excess of the debt, and Shedd had assured him that Shedd had received fifty to one hundred inquiries about the property and that the time of sale was " as good a time as any."

∴ If the defendant, in reliance upon the assurance of Shedd that there would be no deficiency judgment against him, had just grounds to remain inert and at gaze without further securing himself or without protecting himself against a deficiency, it seems to me that the doctrine of equitable estoppel by representation applies, in that the plaintiff made statements that indicated her abandonment of an existing right of a plaintiff in a foreclosure by sale.

As a rule, to constitute such an estoppel there must be representation as to a fact past or present, but there is a well-recognized exception · that applies in this instance. After statement of the general rule, the court in *Insurance Co.* v. *Mowry* (96 U. S. 547) says: " The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act. An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made. The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them." (See, too, *Dickerson* v. *Colgrove*, 100 U. S. 578, 580; *Trustees, etc.,* v. *Smith*, 118 N. Y. 641; *Faxton* v. *Faxton*, 28 Mich. 159, a leading case cited in *Dickerson* v. *Colgrove, supra,* and *Trustees, etc.,* v. *Smith, supra; Harris* v. *Brooks*, 21 Pick. 195; *Johnson* v. *Blair*, 132 Ala. 128; *Stayton* v. *Graham*, 139 Penn. St. 1–12; *White* v. *Walker*, 31 Ill. 422–427; 21 C. J. " Estoppel," 145(b); Bigelow Estop. [5th ed.] 650; 2 Herman Estop. 903.) In *Faxton* v. *Faxton* (*supra*), a case essentially like the case at bar, the court per CAMPBELL, J., say: " There is no rule more necessary to enforce good faith

than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect." (See, too, the language of SWAYNE, J., for the court in *Dickerson* v. *Colgrove supra*, 580.)

The learned counsel for the respondent contends that Shedd's statements were mere expressions of opinion. Of the five or six conversations between defendant and Shedd the defendant seems to narrate the particular statements of two. The defendant testifies that Shedd said to him: "There will be no deficiency judgment against you; we won't bother you any, because we think we will get our money out of it." This contention of the appellant may be considered with reference to these statements. The statement "there will be no deficiency judgment against you," could be taken as the declared purpose of the plaintiff. The statement "we won't bother you any," is likewise a positive assertion. "Because we think we will get our money out of it" may be taken as the reason "they" would not "bother" him. But the statement of the reason does not weaken the assertion. It would have been quite different if Shedd had said, "In my opinion there will be no deficiency judgment against you, because the value of the realty is ample to secure payment of our money;" or, "We will not bother you if the property sells so as to cover our debt;" or, "The value of the property is so great that you need not bother about any deficiency." However this may be, there is in another part of the testimony of the defendant, a statement of a conversation when the defendant said: "I do not want you to get any judgment against me," and Shedd answered, "you need not bother about that; we won't bother you with any judgment." This as testified to is the complete answer of Shedd, and is a positive, unqualified, unequivocal statement. There is nothing opinionative in such language.

I do not overlook the testimony as to the stipulation which enabled the court to change strict foreclosure to foreclosure by sale. The defendant signed this stipulation gratuitously

and thereby, so far as he was concerned, made a deficiency possible. The testimony of the defendant and of Lockwood is contrary to the conclusion that defendant signed the stipulation at the request of Shedd — although defendant also testifies that he signed " another paper " at a time when Shedd made representations to him; and at another part of his testimony the defendant says that he " would not have consented to sell " save that he relied upon Shedd's statement as to the deficiency. He testifies that he attended the sale because he had furniture in the premises, and that he knew nothing of any purpose of the plaintiff to hold him for the deficiency until the service of the summons in this action. He is somewhat corroborated as to the attitude of the plaintiff by the testimony of Williams.

The doctrine of estoppel *in pais* is applicable in law as in equity. (*Williamsburgh Savings Bank* v. *Town of Solon,* 136 N. Y. 465, 474.) It is not essential that there should have existed in Shedd the intention to mislead. (*Continental Nat. Bank* v. *Nat. Bank of Commonwealth,* 50 N. Y. 583.) Equitable estoppel need not rest upon consideration or agreement or legal obligation. (*Rothschild* v. *Title Guarantee & Trust Co.,* 204 N. Y. 464.)

I think that the findings that defendant was not misled by nor relied upon any statements of Shedd or of the plaintiff, and was not thrown off his guard nor lulled to sleep thereby, and that no representations or statements were made to the effect that no attempt would be made to hold him personally liable for a deficiency, are contrary to the evidence.

I think that in this action we cannot review the decision of the Connecticut court as to its jurisdiction over the defendant in the foreclosure action perforce of his execution of the stipulation, although personally I am perplexed as to the jurisdiction. And the same is true as to the interpretation by the Connecticut court of the Connecticut statute whereby any deficiency was determined in this foreclosure action by the Connecticut court, although, speaking for myself, I have grave doubt as to the correctness of that interpretation.

I advise that the judgment be reversed and a new trial be granted, with costs to abide the event, on the ground that the findings of fact embodied in the fifteenth finding, " that

defendant was not misled by and did not rely upon any statements or representations of said agent Shedd or of plaintiff; that defendant was not thrown off his guard nor lulled to sleep by any action or representation of the plaintiff or her agent; that no representations or statements were made to him by plaintiff or her agent to the effect that no attempt would be made to hold him personally liable," are not supported by the evidence, but are against the evidence.

MILLS, RICH, BLACKMAR and JAYCOX, JJ., concur.

Judgment reversed and new trial granted, with costs to abide the event, on the ground that the findings of fact embodied in the fifteenth finding, " that defendant was not misled by and did not rely upon any statements or representations of said agent Shedd or of plaintiff; that defendant was not thrown off his guard nor lulled to sleep by any action or representation of the plaintiff or her agent; that no representations or statements were made to him by plaintiff or her agent to the effect that no attempt would be made to hold him personally liable," are not supported by the evidence, but are against the evidence.   Settle order on notice.