Harry T. Nusbaum, J.
On August 21,1965, the plaintiff landlord and the defendant entered into a lease for the rental of apartment 303 at premises 250 East 63rd Street in Manhattan. The term of the lease was for three years, beginning on September 1,1965, ending on August 31,1968 and the rent reserved therein was $305 per month. The lease was the ‘ ‘ 'Standard Form of Apartment Lease ” put out by the Beal Estate Board of New York and contains the usual prohibitions against assignment and subletting without the landlord’s prior written consent and against the oral waiver of any of the terms and provisions of the lease.
From the testimony adduced at the trial, the following additional facts have emerged. In or about the early part of July, 1966, the defendant advised the landlord that she was finding it difficult to pay the rent of $305 per month and requested leave to assign or sublease. She was advised by the landlord that such permission would be granted, provided the tenant produce a person of financial responsibility who would assume the terms *112 and obligations of the lease to be performed by the tenant.
Shortly thereafter, on or about July 19, 1966, the tenant did in fact produce such a person who was acceptable to the landlord. That individual, one Florence Horner, willingly undertook to perform the terms and obligations of the lease on the tenant’s part to be performed. She, in fact, duly executed an assignment and assumption of the lease and caused it to be delivered to the landlord, together with two checks, as follows: a check dated July 30, 1966 in the sum of $305 payable to the defendant, indorsed over to the landlord, to cover the defendant’s security deposit under the lease and a check dated July 31, 1966 in the sum of $305 made payable to the landlord for the August rent.
The tenant having fully complied with the landlord’s requirements with respect to the assignment of the lease and relying upon the oral consent of the landlord acting through its agent, removed from the premises on July 29, 1966. It would appear at this point that the landlord, with the new tenant’s checks and the assignment and assumption agreement in its hands, decided to make the most of the situation. It demanded and received from the new tenant her agreement to execute a new lease for the remaining two-year term of the defendant’s lease under which the tenant would pay $305 per month during the first year, and $335 per month — (an increase of $30 per month) — during the second year. Such a lease was, in fact, prepared by the landlord and sent to a real estate broker acting on behalf of the tenants. However, in addition to the increased rent, the lease contained an additional clause not previously discussed and not in the defendant’s lease which required the new tenant to pay for the electric current needed to activate the electric fans on the fan coil units as additional rent. Uncertain of her liability under this clause of the lease, Mrs. Horner rejected it and, through the broker, caused the lease to be returned tp the landlord.
The landlord now seeks to recover three months ’ rent, redecorating expenses, advertising costs, commissions incurred on reletting and reasonable attorney’s fees, totaling in all the sum of $1,389 after giving credit to the tenant for the security deposited under the lease.
The defendant’s answer denies breach of the lease agreement and affirmatively pleads the landlord’s agreement to the assignment and assumption of the lease by Mrs. Horner, the defendant’s reliance thereon, and the landlord’s subsequent failure to honor its consent to the assignment.
*113 The case is almost a classic example of the well-known fable “ the straw that broke the camel’s back.” Questioning by the court revealed that the electric current clause which caused Mrs. Morner to reject the lease would have resulted in a charge to her of less than $1 per month. Unfortunately, she had no way of being sure of that fact and apparently just refused to accede to any further and additional demands which went beyond her original agreement to take over the lease.
The question now, is whether the landlord can be permitted to hide behind the clauses of the lease prohibiting oral waivers and requiring a written consent to an assignment to avoid responsibility for losses which resulted solely from its own attempts to overreach. I think not.
Equity and justice require this court to impose the doctrine of estoppel and to find that there was in fact a valid consent to the assignment of the lease. No question was raised at the trial as to the authority of the persons who acted on behalf of the landlord, or as to their ability to bind it to an oral agreement modifying the lease, if in fact such an agreement was made. Even though a written contract contains a stipulation against oral modification, our courts have consistently held that it may be orally changed, or modified. (Beatty v. Guggenheim Exploration Co., 225 N. Y. 380; Drennan v. Sun Ind. Co., 271 N. Y. 182; Biloz v. Tioga County Patrons’ Fire Relief Assn., 21 N. Y. S. 2d 643, affd, 260 App. Div. 976.) This is especially so when in reliance upon the oral agreement, one of the parties changes his position. (Alcon v. Kinton Realty, 2 A D 2d 454.)
“Although [the words] waiver and estoppel are sometimes used interchangeably, they grow out of different conceptions. Waiver is predicated on intent; estoppel, on the other hand, is a doctrine of equitable origin that imposes a result regardless of intent and sometimes in defiance of it.” (21 N. Y. Jur., Estoppel, Ratification and Waiver, § 16.) In the case at bar, even if it were conceded that the consent to the assignment of the lease had to be in writing and that such consent could be arbitrarily withheld (Dress Shirt Sales v. Martinique Assoc., 12 N Y 2d 339), the statements and acts of the landlord which were relied upon by the tenant and by reason of which she changed her position now preclude the landlord from asserting the invalidity of the oral consent. The defendant, tenant, in the case at bar, fully executed and performed the conditions laid down by the landlord in order to obtain its consent to the assignment. The landlord’s subsequent acts as a result of which it sustained the damages sued for herein cannot now *114 be laid at the tenant’s door. (Witherell v. Kelly, 195 App. Div. 227; Alcon v. Kinton Realty, supra; 21 N. Y. Jur., Estoppel, Ratification and Waiver, § 66.)
The defendant’s affirmative defense is, therefore, sustained and judgment is awarded to the defendant dismissing the plaintiff’s complaint.