511 P.2d 206

Charles F. SULLENGER, Doris Boldman, Gilbert Sullenger, Marie Beach, and Francis Welker, Appellants,

v.

Leroy SHAW and Betty Jean Shaw, husband and wife, and Ewing Mattress & Manufacturing Co. of Tucson, a domestic corporation, Appellees.

No. 2 CA–CIV 1368.

Court of Appeals of Arizona,
Division No. 2.

June 29, 1973.

Rehearing Denied Sept. 6, 1973.

Review Denied Oct. 9, 1973.

Messing, Hirsh & Franklin, P. C., by William Messing, Tucson, for appellants.

Bernard Weinstein, Tucson, for appellees.

HOWARD, Judge.

On July 18, 1966, the appellants, plaintiffs below, entered into a lease on a building and lot at 727 South Park Avenue, Tucson, Arizona. The term was for ten years, commencing October 1, 1966. The rent specified by the lease was in the total sum of $110,816.40, payable at the rate of $923.40 per month.

The lease contained the following paragraph:

\* \* \* \* \* \*

"The parties of the second part agree neither to assign this lease nor to let or underlet the whole or any part of said premises without the written consent of said parties of the first part first had and obtained, and in the event of any assignment or sublease, the assignee or sublessee shall neither assign nor sublet, except upon written consent of the parties of the first part had and obtained."

\* \* \* \* \* \*

In a conversation in March of 1970, between defendant-appellee LeRoy Shaw, Charles E. Ewing, president of the Ewing Mattress and Manufacturing Company of Tucson, and Donald Z. Vesey, an employee of the defendant corporation, the plaintiff Charles F. Sullenger represented to defendants that the plaintiffs would permit an assignment or subleasing of the leased premises if a suitable tenant were found. On October 15, 1970, Shaw sent the following letter to Mr. Sullenger:

\* \* \* \* \* \*

"We hereby request permission, in writing, to sub lease all of the property we have on lease located at 727 S. Park Avenue, Tucson, Arizona.

We will check on the sub-leasee [sic] as to the type of business and let you know ahead of time for your approval."

\* \* \* \* \* \*

In response to this letter, Charles Sullenger [1] stated that he would not give written permission until an actual suitable tenant was presented to him and again represented that if such a suitable tenant were found, plaintiffs would consent to the subletting.

The defendants, relying on such representations, then began an earnest search for other quarters for their mattress manufacturing business, and on October 15, 1970, entered into an agreement to purchase a building and lot at 4261 South Country Club, Tucson, Arizona, for the purchase price of $235,000. In further re-

---

1. Charles Sullenger had a Power of Attorney to act for the appellants in relation to the leased premises.

liance upon the representations of plaintiffs, the defendant advertised for a subtenant or assignee of the leased premises, and in either November or December, 1970, began negotiations with the parties who are presently occupying the leased premises, the Mitchell Furniture Company. Plaintiff Charles F. Sullenger knew about the advertising by the defendants in a local newspaper while such advertising was going on, but he failed in any way to protest or object to defendants about seeking a tenant for the leased premises.

Plaintiffs learned in January, 1971, that defendants were moving out of the leased premises and that the present subtenant was moving in, and failed to protest or object to the defendants or the subtenant although on February 3, 1971, the plaintiffs did tell the subtenant that it couldn't lease from the defendants. Appellants admitted at the trial that the present subtenant was suitable. The plaintiffs brought the subtenant a new lease between the plaintiffs and the subtenant on the premises for a new ten-year term, the rent being $1,250 per month, the amount the subtenant was to pay the defendants. The subtenant declined to enter into the new lease. The plaintiffs did not request the subtenants to vacate the premises.

On February 8, 1971, plaintiffs' attorney sent the following letter to defendants:

"Dear Sir:

Mr. Fred Sullenger, on behalf of the owners of the premises leased to you on Park Avenue in Tucson, has handed me the Consent to Assignment that you mailed to him. The Sullenger's [sic] do not consent to your attempt to assign this lease and further, advise you that you have breached the lease agreement by subletting the same to a third party.

Will you please, at your earliest opportunity, contact me, either directly or through your attorney, so we can resolve this matter without access to the courthouse?"

\* \* \* \* \* \*

Nothing was resolved and on March 10, 1971, plaintiffs filed this action.

The trial court made extensive findings of fact, which appellants do not dispute. The trial court in its Conclusions of Law found, *inter alia:*

\* \* \* \* \* \*

"5. By their conduct and by representing to Defendants that an assignment or subletting to a suitable tenant would be allowed, which representations Defendants had a right to rely upon and did rely upon, to their detriment by purchasing a building and lot to which to move their business, thus incurring additional financial burdens, Plaintiffs are estopped to assert a forfeiture of the lease for the violation of the covenant against assigning or subletting."

■ Appellants claim the evidence does not suggest an estoppel. We do not agree. There is ample evidence to support the trial court on this issue.

■ Appellants also claim that application of the principle of estoppel violates the Statute of Frauds, A.R.S. § 44–101, subsec. 6, which requires a lease for longer than a year to be in evidence by a writing signed by the party sought to be charged. The basis of this contention is that estoppel is the same as an oral modification of the lease and therefore within the statute and law enunciated in Executive Towers v. Leonard, 7 Ariz.App. 331, 439 P.2d 303 (1968). We do not agree. The cited case is inapposite. A lessor can be precluded from asserting a covenant against subletting by estoppel, Blair House Associates v. Dattola, 63 Misc.2d 111, 311 N.Y.S.2d 166 (1970); Marshall v. Smith, 199 S.W.2d 555 (Tex.Civ.App.1946).

■ Appellants also contend that the trial court had no authority to award attorney's fees to the appellees. This contention is based on the fact that the lease provides:

"Should either party hereto *institute any action or proceedings in court to en-*

*force any provision hereof,* or for damages by reason of an alleged breach of any provision hereof, *and should such party prevail in such action or proceedings.* . . ." (Emphasis added)

Since the appellees did not "institute the action" appellants claim that there should have been no award of attorney's fees. Appellees defend the awarding of the fees on the basis of the following stipulation made in open court:

"Would the record reflect that Mr. Weinstein and myself have stipulated that the end of this trial without further testimony that the court may enter an appropriate award for attorney's fees for the prevailing party in this lawsuit *according to the lease which is exhibit number 1 in evidence.*" (Emphasis added)

As can be seen, the stipulation was that the court could award attorney's fees "according to the lease." This means that only the prevailing party who instituted an action could recover such fees. The trial court apparently awarded the fees on the basis that the counterclaim constituted the institution of proceedings to enforce the lease.

This counterclaim was for declaratory relief. In essence, it was merely a reassertion of the affirmative defenses set forth in the answer.

The defendants prevailed on their counterclaim. Defendants have not provided us with any authority to support the conclusion that this counterclaim falls within the provisions of the lease. As we view it, the counterclaim was no more than a defense to the main action attired in a different form. The trial court erred in awarding such fees and defendants are not entitled to attorney's fees on appeal.

The judgment is affirmed in all respects except as to the awarding of attorney's fees.

HATHAWAY, C. J., and KRUCKER, J., concur.