with, the reason for the suspension of the statute does not exist. In this case, however, the attempt to designate such person was inadequate. The section mentioned provides the manner of making this designation, and three essential things were omitted in this endeavor: (1) It failed to designate the place where the service could be made. (2) It lacked the consent of the person designated. (3) It was not filed in the office of the Secretary of State. Inasmuch as the defendant is asserting its compliance with law in invalidating a certificate duly issued, it must show a fairly strict conformity to the law."

This is judicial recognition of the force and effect of the Code provision, and authorizes the deduction that if said provision had been complied with the defense would have been held good. It seems to me clear that, if a foreign corporation has strictly complied with the provisions of subdivision 2 of section 432, it may invoke the defense of the statute of limitations. It must be conceded that the Legislature has full power to determine how and when a foreign corporation may be sued, and, unless prevented by constitutional provisions, what defenses it may interpose. Unless these two sections, read together, mean that the statute may be interposed when the designation provided for has been made, the exception provided for in section 401 is absolutely meaningless. We are not permitted so to construe a statute. We are to give force and effect to all the language, and, if there is a fair and reasonable construction possible, that must be adopted. Complete rejection of language is nullification, and not interpretation.

I therefore reach the conclusion that the judgment appealed from must be reversed, with costs, and the demurrer overruled, with costs to the appellant. All concur.

---

KNICKERBOCKER TRUST CO. et al. v. O'ROURKE ENGINEERING CONST. CO.

(Supreme Court, Appellate Division, First Department.   February 7, 1908.)

RAILROADS—LEASES—RESCISSION—PROMPT ACTION—NECESSITY.

 A lessee, who desires to rescind for fraud or breach of warranty, must act promptly upon discovering the fraud or breach; and the lessee of railway cars waived any right to disaffirm the lease for a breach of warranty, where without attempting to rescind, or hinting at any ground justifying rescission, it made an arrangement for subleasing cars not needed by it.

Appeal from Trial Term.

Action by the Knickerbocker Trust Company and another, trustees, against the O'Rourke Engineering Construction Company. From a judgment for plaintiffs, and from an order denying a new trial, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

L. Laflin Kellogg, for appellant.
Herbert Barry, for respondents.

SCOTT, J. The defendant appeals from a judgment entered upon a verdict directed in favor of plaintiff. The action is for the rental of certain dump cars leased to defendant and known as "Goodwin cars."

The defendant was the contractor for certain improvements proposed to be made by the New York Central & Hudson River Railroad Company at and about its terminal in Fourth avenue, in the city of New York. The work to be done included a vast amount of excavation; it being contemplated that the excavated material should be loaded on cars and taken to various points on the line of the railroad where filling was required. As it would be necessary to run these cars over the permanent tracks in use for passengers and freight trains, it was desirable that cars should be used which would carry loads of excavated material without spilling, and that would dump it on one side of and clear of the track. After considering the comparative advantages of a number of patterns of cars, the defendant finally selected the Goodwin car, and leased 69 of them at an agreed per diem rental. The present action is for the unpaid rental of 31 of these cars, and no question of amount is involved, as it was stipulated at the trial how much the plaintiff would be entitled to recover, if so entitled at all.

The leases to defendant were originally made by the Goodwin Car Company, the manufacturers of the cars; but subsequently, in conformity with a trust agreement between the plaintiffs and the Goodwin Car Company, and at the request of the latter, substituted leases were executed by plaintiffs to defendant. The cars were received by defendant in October, 1903, and in a very few months they proved to be unfitted for defendant's purposes, so far as concerned the handling of rock blasted during the course of the excavation. The defendant seems to have complained, as early as February, 1904, that the cars would not do the work expected of them, and from that time on, and especially from May, 1904, correspondence was carried on between defendant and the Goodwin Company respecting the inadequacy of the cars for the work required of them, which culminated in August, 1904, in the subleasing agreement to be hereafter referred to. In considering whether or not a verdict against defendants was rightly directed, it becomes necessary to consider the affirmative defense as outlined in the answer; for it is upon this that defendant relies.

It is alleged as to each lease (for there are two involved in the action) that it was entered into "upon the false and fraudulent representations," by circulars, photographs, verbal statements, and writings, "that the Goodwin cars could handle all kinds of rock excavation of any size, and could do the work of defendant under its contract with the New York Central &. Hudson River Railroad Company in the shortest possible time and at the least cost per cubic yard," and "that thereafter and upon a trial of said cars it was found that the representations made by the Goodwin Company were false and untrue, and that the said cars were wholly unable to remove rock of all sizes, or to do the work of the defendant under its contract." Almost all of the record is taken up with evidence tending to show the statements and representations made by the officers of the Goodwin Car Company as to what their cars could do, and to establish the fact that the cars could not do the work required of them. If the defense rested upon the question whether or not the representations, or, more properly, warranties, were made as alleged, and that the cars failed to do what they had been

represented or warranted to do, there would certainly be enough in the evidence to carry the case to the jury.

This is not, however, the defense as pleaded. The defendant goes on to allege that upon the discovery of the inadequacy of the cars, and in May, 1904, he refused to proceed further under the lease, or to pay further therefor, and offered and tendered back to the plaintiffs and the said Goodwin Car Company the cars so leased; that thereafter, and upon the 4th day of August, 1904, an agreement was entered into with the Goodwin Car Company (with the consent and approval of the plaintiffs) that 56 cars then in possession of defendant, and including the cars on which rental is sought to be recovered in this action, should be subleased by the Goodwin Car Company in the name of defendant, and the rentals received under the sublease be paid over to the plaintiffs; that it was further covenanted in said agreement that the said Goodwin Car Company would not manufacture any new cars for the purpose of leasing the same in competition with any of the cars made under said lease, and for which they had agreed to procure subleases, and would have the right to build only such additional cars as would not fairly be considered to be put into competition with those cars covered under the leases; that thereafter, and until the 16th day of June, 1905, the plaintiffs and the Goodwin Car Company proceeded under said modified agreement, and many of the cars were leased as therein provided, and some of the rents received therefor applied as agreed; that the plaintiffs and the Goodwin Car Company have wholly failed to carry out and perform the agreement, and have not performed and carried out the same in good faith, and have failed to sublease the said cars as called for in said agreement, and in attempting to lease the same; that they have manufactured new cars, and have sold the same, which have come into competition with those leased by defendant; that thereupon, and upon learning the facts, the defendant elected to treat the said contract as rescinded, and on or about June 16, 1905, duly notified plaintiffs to that effect and tendered back the cars.

It will be observed that the defendant does not rest its defense upon a rescission of the original contract of leasing alone, but relies upon its right to have rescinded that contract and the breach of the subsequent agreement of subleasing. It is quite clear that it could not have successfully defended upon any attempted rescission of the original contract with plaintiff, for no such rescission was shown. If we assume that the evidence showed that that lease was induced by certain representations on the part of the Goodwin Company as to what the cars would do, and that those representations were not fulfilled, it may be that the defendant would have been justified in rescinding the contract and tendering back the cars; but it is elementary that a purchaser or lessee, wishing to rescind for such a reason, must act promptly upon discovery of the fraud or of the breach of the warranty. If he sleeps upon his rights, or expressly affirms the contract, or does acts inconsistent with disaffirmance, he loses the right to rescind. The allegations in the answer, that in May, 1904, the defendant notified plaintiffs of the ascertained inadequacy of the cars, and that it refused to proceed further under the lease, or to pay further therefor, and ten-

dered back the cars, are not borne out by the proofs. On May 17, 1904, defendant wrote to the Goodwin Car Company as follows:

"We have at present time 69 of your cars in service; but, in consequence of the large proportion of rock which we are handling, we cannot keep them all employed. It would oblige us very much if you would arrange to take 25 of these cars off our hands, which I presume you can readily do, as the cars are most excellent for handling any kind of material, excepting rock."

To this the Goodwin Car Company replied:

"While we cannot obligate ourselves in any manner to relieve you of any of the cars on hand, we will take the matter up promptly, and any opportunity we have for leasing the cars we will present to you for consideration."

The defendant replied to this letter as follows:

"Your favor of May 19th, in regard to subleasing for us certain of your cars which we now have under lease, came duly to hand. We trust that you will give this matter your immediate attention; for, as pointed out to you, the cars we are desirous of leasing are of no use to us at present."

In this correspondence there is certainly no attempt to rescind the lease, and no hint that any ground existed which would justify a rescission. In August, 1904, the agreement as to subleasing the cars was made, substantially as alleged in the answer. It was embodied in certain letters between defendant and the Goodwin Car Company, dated, respectively, August 2, 4, and 9, 1904. The Goodwin Car Company did not undertake absolutely to obtain subleases, but merely undertook to attempt and endeavor to do so. It was agreed that 13 of the cars should be retained by defendant on its work, and that as to the remaining 56 the leases of them to defendant and its obligations thereunder were not altered; the defendant authorizing the Goodwin Company to procure sublessees, to whom the defendant would execute subleases, and the Goodwin Company, on its part, agreed as to the manufacture of new cars as alleged in the answer. If anything were needed to establish defendant's express waiver of any right to disaffirm or rescind the original contract, it is furnished by this agreement as to subleasing.

As to this last agreement there is not the slightest evidence that the Goodwin Company did not attempt in good faith to perform what it had undertaken to do, or that it violated its agreement not to put cars on the market in competition with the cars leased to defendant. The defendant failed at every vital point to establish its defense, and there was nothing to submit to the jury. The verdict was, therefore, rightly directed.

Judgment and order affirmed, with costs. All concur.