## J. J. LITTLE & IVES Co., Respondent, *v.* LAMB PUBLISHING COMPANY, Appellant.

(Supreme Court, Appellate Term, First Department, July, 1919.)

Sales — of goods — rescission of — evidence — Personal Property Law, § 124 (1, 3).

> On the date of defendant's bill of sale of a set of electrotype plates, which stated that they were held by a third person subject to the order of plaintiff, there was sent to plaintiff a bill for the plates with a letter stating that upon receiving instructions, defendant would notify the third person to ship the plates as directed by plaintiff. For more than eighteen months nothing was done by either of the parties in reference to the plates except that a note given for the purchase price thereof after one renewal was paid, and plaintiff by letter requested the third person to send the plates. The third per-

son expressed his willingness so to do upon payment of certain charges which plaintiff refused to pay, and, without rescinding the sale, asserted its ability to prove its right to the plates. In an action to recover the purchase price, on the ground that the plates had never been delivered, *held,* that a judgment in favor of plaintiff should be reversed and judgment directed for defendant.

Notwithstanding the provision of section 124(3) of the Personal Property Law which provides that " Where the goods at the time of sale are in possession of a third person, etc.," plaintiff had clearly waived any claim to require defendant to procure a formal acknowledgment from the bailee that the goods were being held on plaintiff's behalf.

The bill of sale reciting that the goods were at a certain place which, under section 124(1) of the Personal Property Law, was the place of delivery, defendant was under no obligation to ship the plates as directed by plaintiff, and its offer to transmit shipping instructions did not increase its obligation in that respect.

Evidence considered and *held,* that plaintiff had complied with none of the requirements justifying a rescission of the sale.

APPEAL by defendant from judgment of the City Court of the city of New York in favor of plaintiff.

Davies, Auerbach & Cornell (Charles H. Tuttle and Carl E. Peterson, of counsel), for appellant.

Breed, Abbott & Morgan (Hiram Thomas, of counsel), for respondent.

WEEKS, J. Defendant on September 8, 1914, sold to plaintiff a set of electrotype plates of Edgar Allen Poe's works. It was stated on the bill of sale of the plates that they were " Held at C. H. Simonds & Co., Boston, Mass., subject to the order of J. J. Little & Ives Co.," the plaintiff.

On the same date the bill for the plates was sent by messenger to the plaintiff with the following letter from defendant:

"Enclosed please find bill for Poe Plates. As soon as I receive instructions from you, we will notify Simonds to ship plates to any place you may specify. * * * Please give bearer note."

Plaintiff delivered to the messenger a note for $1,500, payable in three months, for the purchase price of the plates and a letter in which defendant was requested to "ship Edgar Allen Poe plates to our vaults as soon as possible."

On September 10, 1914, defendant wrote to Simonds:

"Kindly deliver to Messrs. J. J. Little & Ives Company, 425 West 24th Street, New York City, the electrotype plates of Edgar Allen Poe's Works, which you have on your premises belonging to us as sold to us by Messrs. MacDonald & Sons and kindly notify J. J. Little & Ives Co. when making shipment."

Between the date of the last letter, September 10, 1914, and March 8, 1916, it does not appear that anything was done by either of the parties in reference to the plates, except that the note for the purchase price was paid on March 22, 1915, apparently after one renewal, and except that on one occasion, possibly more than a year after the sale, the plaintiff's president telephoned the defendant's president that the plates had not yet arrived and was told that defendant had ordered them sent and was given the address of Simonds & Co. and told to write them about it.

It does not appear that plaintiff then made any objection or any claim of non-delivery or that plaintiff thereafter took any steps to obtain the plates until plaintiff's attention was again called to the matter by the defendant which had received a letter from C. H. Simonds Company dated March 8, 1916, as follows:

"We find that we have in our vaults a lot of 53 boxes containing the plates and cuts for Poe. These

we believe were transferred to you by MacDonald & Sons. We regret that we are unable to keep these on free storage, and will be pleased to receive your instructions for shipping them."

This letter was sent to plaintiff by defendant for reply, and on March 17, 1916, plaintiff wrote Simonds:

"Replying to your letter of March 8, 1916, sent to the Lamb Publishing Co. regarding a lot of 53 boxes containing plates and cuts of the works of Poe, we beg to say that this particular lot of Poe plates was purchased by us from the Lamb Publishing Co. and was ordered to be shipped to us about a year and a half ago. Messrs. MacDonald & Sons sent us a complete receipt for these plates, showing our ownership and title to these works. If you will be good enough to send these to us by freight, we will appreciate it."

It appears from subsequent correspondence, offered by plaintiff but excluded upon defendant's objection, that Simonds Company was willing to send the plates to plaintiff, but claimed fifty-three dollars for storage, which probably was not for any period prior to the sale, as no notice was sent that the plates would not remain upon free storage until March 8, 1916, and eight dollars and ninety-five cents for teaming and for shipping the plates. The plaintiff refused to pay these charges, but did not rescind the sale; on the contrary, it asserted its ability to prove its right to the plates, as appears from a letter sent by it to defendant April 15, 1916, which seems to be the last letter passing between the parties.

No claim of rescission was made until May, 1917, when this action was brought to recover the purchase price upon the ground that the plates had never been delivered.

The president of plaintiff testified that he supposed plaintiff had been careless in regard to the plates

down to 1916; that it was assumed plaintiff had the plates, but that in making plans for that year for printing editions of books plaintiff discovered that it did not have the plates; that in September, 1916, plaintiff began to dispose of its plates for the reason that the cost of paper had risen to such a point that it was more profitable to have money in the bank than plates in the cellar.

At the close of the testimony both parties moved for the direction of a verdict and the court directed a verdict in favor of the plaintiff.

In view of the facts disclosed by the record we are of opinion that the judgment should be reversed and judgment directed in favor of the defendant.

While it is true that subdivision 3 of section 124 of the Personal Property Law provided that '' Where the goods at the time of sale are in the possession of a third person, the seller has not fulfilled his obligation to deliver to the buyer unless and until such third person acknowledges to the buyer that he holds the goods on the buyer's behalf,'' the plaintiff had clearly waived any claim to require the defendant to procure a formal acknowledgment from the bailee that the goods were being held on the buyer's behalf.

The terms of the bill of sale stated that the goods were in Boston subject to the order of plaintiff, and as Boston, under subdivision 1 of section 124, was the place of delivery, the defendant was under no obligation to ship the plates to New York, and defendant's offer to transmit shipping instructions did not increase its obligation in that respect.

The plaintiff renewed its note and then paid the renewal note without objection and without making any claim of non-delivery, and when plaintiff discovered, about a year after the sale, that the plates had not been received by it, no demand was made that the

defendant do anything in the matter, but plaintiff's president apparently accepted the suggesion that he write to the bailee, nor did it make any claim of non-delivery when its attention was called by defendant, eighteen months after the sale, to the fact that the plates were still in Boston, but on the contrary, in its letter of March 17, 1916, plaintiff asserted its ownership of the plates and its title thereto.

The fact that the plates had not been received by plaintiff could not have been known to the defendant, and the admitted carelessness of plaintiff's president in failing to make the discovery furnishes no excuse for rescission of the contract at this late day upon the ground of non-delivery.

Especially is this true where the claim of rescission is not made until long after knowledge of the fact and not until after the value of the article purchased has greatly depreciated in value.

In order to recover upon the theory of rescission a party is required to act promptly upon discovery of the ground for rescission and to give notice of an intention to rescind and to restore benefits received so that the other party may be placed *in statu quo*. If he expressly affirms the contract or does acts inconsistent with disaffirmance, the right to rescission is lost. *Knickerbocker Trust Co.* v. *O'Rourke Engineering Constr. Co.,* 124 App. Div. 210; affd., 196 N. Y. 509. He cannot lie by and speculate whether to disaffirm or to allow the contract to stand. He cannot be permitted to rescind after the course of events has demonstrated that disaffirmance is the better policy. *Hallahan* v. *Webber,* 7 App. Div. 122.

In the instant case the plaintiff has complied with none of these requirements.

This conclusion is fortified by the letters which were offered by the plaintiff but not received in evidence,

and for that reason we feel it unnecessary to order a new trial.

Judgment reversed and judgment directed for defendant, with costs in both courts.

Lehman and Finch, JJ., concur.

Judgment reversed, with costs.